## STATE ex BARTLETT v BUCKEYE STATE BUILDING & LOAN CO.

Ohio Appeals, 2nd Dist, Franklin Co

No 3292. Decided Nov 7, 1940

Ralph J. Bartlett, Prosecuting Attorney, Columbus, and R. P. Barnhart, Asst. Pros. Atty., Columbus, for plaintiff-appellee.

Wilson & Rector, Columbus, for defendant-appellant.

### OPINION

By GEIGER, J.

This case is before this Court on appeal on questions of law from a judgment of the Court of Common Pleas against the defendant for the sum of $11,098.50 alleged by the Prosecuting Attorney to have been illegally paid by the County Treasurer to the defendant in repayment of penalties on certain property on which there had been a default in the payment of taxes.

The petition sets out 15 different causes, each claiming a separate sum as due to the county on account of the refund of the penalty to the defendant on separate parcels of real estate. The payments by the defendant into the county treasury were by the official act of the sheriff who, upon the sale of property upon which the defendant

held a mortgage, paid into the county treasury the taxes due, whether delinquent or current, and the penalties that had been assessed for the nonpayment of taxes as the same became due. While the defendant did not, as a corporation, pay the penalties into the county, the same were paid by the sheriff out of the money that otherwise would have been distributed to the defendant.

The amended petition sets up the official character of the plaintiff and states that he brings the action under the authority of §2921 GC.

It is alleged that on the 30th day of March, 1933, the General Assembly adopted Senate Bill No. 42, commonly known as the Whittemore Act, which was approved by the Governor and afterwards was amended at various times as alleged in the petition, the last amendment thereof being Senate Bill No. 359.

It is alleged that said Senate Bill No. 359 by §1 thereof provides, in substance, that any person required by law to pay real property taxes and assessments which have become delinquent prior to the September settlement of 1935, or any person holding a lien on such property may, at any time prior to the 31st day of December, 1936, elect to pay the principal sum of such delinquent taxes and assessments provided that no such person shall be entitled to make such election unless all taxes and penalties for the year 1935 have been paid in accordance with the provisions of §2653, "provided that in case a penalty and interest have been paid on account of delinquent taxes or assessment for the first or second half of the year 1934, such penalty shall be refunded on order of the county auditor directed to the county treasurer, provided the principal sum of such taxes or assessments is paid prior to the 31st day of December, 1936."

The allegations as to the 15 separate causes of action are substantially the same with some variations which we will note. We will epitomize the first cause of action and also state any other additional pertinent matters appearing in the other causes of action. Skeletonizing the first cause of action, it is

to the effect that the auditor executed a voucher under Senate Bill No. 42 to the defendant drawn upon the treasurer in the amount named; that the check issued by the treasurer bore the notation, "Refund of Taxes overpaid"; that such check was paid by the Treasurer, and that the sum thereof represented refund made under color of Senate Bill 42 of penalty charges on real property paid through the sheriff's office by the order of the Court, for moneys arising from the proceeds of judicial sales; that such refunding was not provided for in Senate Bill 42, and that said bill was not in force on the date of the refunder check.

The second cause of action relates to a like transaction being a penalty refund under Senate Bill 359, and it is alleged that Senate Bill No. 359, in so far as it attempted to confer upon auditors authority to make refund of penalty paid on delinquent taxes, is unconstitutional, and that said refunds were made without authority of law.

The subsequent causes of action are in identical language, but relating to different payments. In the 15th cause of action it is further stated that the Whittemore Acts suspended the operation of §5678 GC, long in force in Ohio, which provided for the charge against the property when taxes were delinquent, of certain penalties and interest.

It is further asserted that the Whittemore Act suspended the operation of §2657, long in force in Ohio, also relating to the charge against delinquent property of taxes and penalties.

It is further asserted in said 15th cause of action that the Whittemore Acts are and were void and discriminatory and contravene Sec. 26 of Art. II of the Ohio Constitution and were retroactive and in conflict with §28 of Art. II, and that the refunds were unauthorized. It is asserted that the total drawn from the treasury by the defendant is $11098.50 for which judgment is asked.

Demurrer was filed to the petition and overruled in part and sustained in part. By an entry the plaintiff is granted leave to amend the amended petition by inserting as the last para-

graph in the first cause of action a statement to the effect that if said payment was made by virtue of Senate Bill 359, said bill is unconstitutional and void and the refund made without authority of law, and by adding to the 9th and 15th causes of action a paragraph to like effect.

A demurrer was filed to the amended petition as amended and overruled.

Thereupon an answer to the amended petition as amended was filed, the first defense of which made certain admissions. and alleges that the General Assembly adopted Senate Bill 42, which was later amended and its application extended, and adopted Senate Bill 359; that Senate Bill 42 made no provisions for refund of penalty.

The defendant denies that the payment to it represented a refund under the authority of Senate Bill No. 42, but that it was made under authority of Senate Bill 359.

For answer to all the other causes of action the defendant denies that the payments or refunds were made without authority of law, and further denies in answer to the 15th cause of action that the Whittemore Acts are void, and that the refunds made to the defendant were unauthorized; or that any part thereof was paid to the defendant without authority.

As a second defense it is alleged that all the payments made to the defendant as alleged in the several causes of action were made by the county auditor upon the advice and direction of the prosecuting attorney with the approval of the Bureau of Inspection and under and by virtue of Senate Bill 359, "and before said Senate Bill had been declared to be unconstitutional by the judgment of any court". It is alleged that the payments were voluntarily made by the officials of Franklin County without any mistake of fact and without any duress or fraud, and are not recoverable by the plaintiff for the benefit of the county. and that the relator is estopped to claim said payments were illegally made or to maintain an action thereon

The plaintiff demurred to the answer and the Court found that the de-

murrer is well taken and sustained the same, and the defendant not desiring to plead further it is ordered that the plaintiff recover a judgment against the defendant in the sum of $11098.50.

An appeal was properly taken from the action of the Court below to this Court.

Errors are assigned to the effect that the Court below erred in sustaining the demurrer to the answer of the defendant and in rendering judgment against the defendant and in holding that payments made to the company were not voluntary, and that the Court erred in holding that said payments were made under the statute which at the time did not authorize the same; that the Court erred in holding that said payments were illegally made to the company, that the county officials were not justified in making such payments. The Court below in sustaining the demurrer of the plaintiff to the answer filed a decision covering the matters in controversy. This decision is before us, and we have read the same with interest. The defendant-appellant takes the position that the refunds alluded to were legally made under a statute then valid before any Court had held it to be unconstitutional; that the payments were voluntary and made without any mistake of fact and without any duress; that the county had full consideration for the refunds in that the purpose for which the law was enacted, to-wit, early payments, had been realized and that the county had been benefited. It is pointed out by the appellant that the act presumed to be constitutional imposed a duty upon the officials to make the refunds and they were all made in pursuance of the act; that there was no mistake of law and the offices were not under a misapprehension as to the law; that they had the advice of the prosecuting attorney and the approval of the Bureau of Instructions which they obeyed; that there was no mistake of fact; that the purpose of the legislation was to meet the moral obligation to equalize the rights of taxpayers. It is asserted that the officers might have raised the question as to the validity of the act before the refunds were paid,

but did not do so. Counsel urge that the statute was valid prior to a judicial determination to the contrary. Citing among others, State v Gardner, 54 Oh St 24; Vernon v State, 71 Oh St 428; and State ex rel v Vail, 399, counsel drawing the conclusion that the county officials rightly felt themselves to be bound by the statute commanding them to make refunds and when they did so before the validity of the law had been questioned, they were not to be charged with having made an illegal payment. If they did make a mistake in treating the law as constitutional, the payments were made under a then valid section. Counsel quotes 31 O. Jur. 212, to the effect that the rule is that money voluntarily paid under a claim of right to the payment and with knowledge of the facts, can not be recovered back on the ground the claim was illegal although the payer expressly reserves his right to litigate his claim.

It is urged that the county auditor could have refused to pay the refund and could have defended on the ground that the act was unconstitutional, and not having done so he was, in his opinion, acting pursuant to the authority of a valid statute. It is asserted that parties may so conduct themselves with respect to the subject of unconstitutional legislation that they are estopped to deny its binding character. It is also asserted that the defense of "voluntary payment" is available against the county. Citing Marietta v Slocomb, 6 Oh St 471.

Counsel cite other cases and authorities, among them 15 C. J. 662; Blumenthal v U. S., 4 Fed. 2d, 808, and maintain that under these authorities the Court below erred in sustaining the demurrer to the answer setting up the defense of voluntary payment.

Counsel discuss at length the case of Vindicator Printing Co. v State, 68 Oh St 362; and State ex rel v Fronizer, 8 C. C. N.S. 216, which case was further considered by the Supreme Court in State v Fronizer, 77 Oh St 7. Counsel also cites Thomas v State, 76 Oh St 341, claiming that that case is in perfect analogy to the case at bar. Counsel points out the distinction that it claims to be made between the payment of taxes and of penalties.

Counsel for appellee files a brief in which he seeks to answer the argument of appellant and to justify the judgment of the Court below.

The narrow question is whether or not the prosecuting attorney may, by virtue of the authority conferred upon him by §2921 GC, recover from the defendant the penalties which were refunded under the provisions of an act of the Legislature which at the time of the refund had not been declared unconstitutional, but was thereafter so held.

Sec. 2921 GC, enacted for the protection of public funds provides in substance so far as it relates to the case at bar, that upon being satisfied that public moneys have been illegally drawn from the treasury the prosecuting attorney may apply by civil action to recover the public moneys so illegally drawn.

There seems to be no contention between the parties as to the unconstitutionality of that part of §1 of Senate Bill 359, which provides that in case a penalty and interest has been paid on account of delinquent taxes such penalty shall be refunded on order of the county auditor directed to the county treasurer, provided the principal sum of said taxes and assessment is paid prior to the 31st day of December, 1936.

In the case of State, ex rel Crotty, Appellant v Zangerle, Auditor, Appellee, 133 Oh St 532, the Court had under consideration the constitutionality of §2590-1, providing that whenever any penalty is paid and is afterwards abrogated by the Legislature, any such penalty paid between June, 1930, and January, 1937, is remitted and abrogated and upon application to the auditor before the first of January, 1940, such penalty shall be refunded on the order of the county auditor directed to the county treasurer. There are many matters of interest discussed by the Court, among them being that penalties and interest, after collection, are to be considered and treated as taxes, the Court stating on page 538,

"Clearly, interest and penalties upon delinquent taxes must be considered as part of the taxes for the purpose of solving the question here presented," and the court holds that in harmony with **Commissioners v Rosche Bros., 50 Oh St 103,** that the statute involved is retroactive and violative of **Sec. 28 of Art. II of the Constitution,** and that the act is likewise patently repugnant to the equal protection clause of **Sec. 2 of Art. I of the Constitution of Ohio,** and Sec. 1 of Art. XIV of the amendments to the Constitution of the United States.

In the case of **State ex rel Outcalt, Prosecuting Attorney v Guckenberger, 134 Oh St 457,** it is held that the provisions of the Whittemore Acts which authorize the remission of the penalties, interest and other charges on unpaid delinquent taxes, when payment of taxes is made within a prescribed time, are valid and not in contravention of the state and federal government.

The opinion by Williams, J., states on page 461,

"This court is of the opinion that no constitutional rights are contravened by the Whittemore Acts insofar as they undertake to remit penalties, interest and charges. In this respect those acts do not violate **Sec. 26 of Art. II** of the **Ohio Constitution,** * * * nor **Sec. 2 of Art. XII** * * * which requires taxation of real estate by uniform rule, for the reason that they concern not taxation or even the collection of taxes but the remission of penalties, interest and charges; nor the equal protection clauses of the state and federal Constitutions * * * for the reason they are not discriminatory but apply to all of one class, namely, delinquent taxpayers who have not paid their taxes, and the classification is not unreasonable nor arbitrary; * * * nor **Sec. 28, Art. II** * * * which forbids the General Assembly to pass retroactive laws, for the reason that the acts are prospective in character—they do not interfere with the vested rights acquired under existing laws, impose a new duty, attach a new disability, or create a new obligation with respect to transactions or considerations already past."

Williams, J., on page 463, comments that, it is urged that the position taken by the court is inconsistent with State ex rel Crotty v Zangerle, Aud., in which the court held unconstitutional the amended Ogrin Act which provided for the refund of penalties. Williams, J., points out that in that case it was held that penalties which had been paid in discharging tax obligations became a part of the taxes collected and were distributed to the subdivisions of the state, and that after payment into the public treasury, cannot be refunded through legislative enactment. The judge points out that there is a distinction, in that penalties, interest and charges, when commingled with taxes in a common fund as a result of collection, are taxes so far as the power of the General Assembly to pass legislation for their refund is concerned, but before collection are not.

In speaking of the Whittemore Act on page 465 it is stated that,

"That part of the enactment provides for a refund of a penalty already paid and is therefore invalid and unconstitutional under the pronouncement in State ex rel Crotty v Zangerle, Aud., supra, but since the part quoted may be separated from the other provisions their validity is not affected thereby.

"In our judgment the Whittemore Acts (except insofar as they provide for refund of penalties) constitute a valid exercise of legislative power and are constitutional."

A question that may engage our attention is whether or not an unconstitutional act has validity from date of its passage until it is declared unconstitutional, or whether it is void **ab initio.** There seems to be some doubt upon the part of counsel upon this question. While we have not been cited to any case directly passing upon this point, we find it incidentally referred to in several cases.

In the case of **State v Vail, 84 Oh St 399**, the opinion is by Shauck, J. We may quote some of his observations:

(Page 405): "No controversy exists respecting the proposition that an unconstitutional law is in legal contemplation inoperative as though it had not been passed."

(Page 406): "The adjudication that the act was unconstitutional only declared that that was its character. Its character had been fixed from the time it was enacted."

In **Thomas v State, 76 Oh St 341;** it is said on page 361, after speaking of the invalidity of an unconstitutional act,

"Upon principle this doctrine may be regarded as entirely consistent with the commonly accepted doctrine that an unconstitutional act of the Legislature is not a law but a nullity. It is in accordance with the general rule that all who assume the validity of legislation do so at their peril. As to them, contracts purporting to be authorized by void legislation have no obligation to be impaired by judicial decisions which apply to them the tests prescribed by the Constitution."

There is, however, a line of cases which are of interest in that they hold that under certain conditions one may not be heard to deny the constitutionality of a law affecting a contract. As touching this matter we cite **State ex rel Hunt v Fronizer, 77 Oh St 7**, which holds that the statute which authorizes the prosecuting attorney to bring an action to recover back money does not authorize the recovery of money paid on the county commissioners' bridge contract fully executed but rendered void from the inadvertent omission of a proper certificate, there being no claim of unfairness or extortion nor any claim of an effort to put the contractor in statu quo by the return of the bridge, etc.

Shauck, J., on page 16, after holding that the money could not be recovered, states,

"This court is of the opinion that such recovery is not authorized. The principle applicable to situations is the equitable one that where one has acquired possession of the property of another through an unauthorized and void contract and has paid for the same, there can be no recovery back of the money paid without putting or showing a readiness to put the other party in statu quo."

On page 17 it is stated:

"It does not appear that it was the intention of the statute to deprive a party who has dealt with the county honestly of any legitimate defense and does not impose upon the court any duty to ignore the well established rules and adjudge in favor of the plaintiff upon his application whether such demand violates fundamental principles of law or not."

**City of Mt. Vernon v State, 71 Oh St 428**, is to the effect that where a municipal corporation has entered into a contract under a statute which is unconstitutional and the facts are such against the corporation as would estop an individual from setting up a defense of the unconstitutionality of the statute, the municipal corporation will also be so estopped.

In **State v Vail**, supra, **84 Oh St 399**, it is held that a party may assert that an unconstitutional act is a nullity, unless his conduct with reference to the subject of the act has been such that to permit the assertion would place his adversary in a less favorable position than he would have occupied had the Act not been passed.

In **Thomas v State, 76 Oh St 341**, it is held that the Supreme Court having affirmed the constitutional validity of the legislative act passed to authorize contracts, and such contract having been entered into and services performed towards its execution, the party performing them is, notwithstanding

the Supreme Court's subsequent decision that the act is constitutionally void, entitled to receive the stipulated compensation for such services as he has performed before the filing of the petition in the action which challenged the validity of such contract.

On page 362 it is said in substance by Shauck, C.J., that contracts executed under favor of acts which the highest court has declared valid are themselves ,valid as against subsequent decisions to the contrary, though the acts may not be valid.

A party may assert the nullity of the law unless his conduct in reference to the subject of the act ██ would place the other party in a less favorable position than he would have occupied if the act had not been passed.

It is further claimed that the plaintiff is estopped from asserting the unconstitutionality of the act because he received into the county treasury the taxes which it was the purpose of the unconstitutional portion of the act to promote, and that therefore the county treasury had received a benefit which prevents the recovery on account of its unconstitutionality. But what detriment has inured to the defendant by virtue of the payment of the taxes and and the penalty out of a fund received by sheriff in a foreclosure proceeding? Under the statute, the defendant, being a lienholder, could have come forward and paid the back taxes and saved the penalty, but it did not see fit to do so. It waited until it chose to :foreclose its lien and then paid the penalty by virtue of the order of the court and the act of the sheriff. It has no moral claim against the county by virtue of any act done by it.

In State v Vail, supra, it is said at the bottom of page 406,

"Nor can it be governed by the doctrine of estoppel which requires that the party to whom it is asserted shall have sustained some detriment by reason of the conduct or representation of him against whom the estoppel is invoked."

Until the defendant can plead and show that it suffered some detriment not by reason of the payment ██ ment by the sheriff to the county treasurer of the penalty, but by the repayment by the county treasurer of the penalty to the defendant, there can be no claim made that the defendant sustained some detriment by reason of the payment by the sheriff, as that has nothing to do with the claimed right to recover now asserted by the prosecuting attorney. The judgment against the defendant is to recover back money wrongfully paid by the plaintiff. Certainly it can not be asserted that the defendant sustained any detriment by reason of the fact that the county treasurer paid to it money to which it was not entitled.

The defendant relies upon its second defense which is to the effect that the money was paid voluntarily without duress and in full possession of all the facts but simply through a mistake of law. The Court below held that the County Treasurer could not be held to make a voluntary illegal payment which would prevent the recovery of the money. The statute itself under which the county prosecutor is proceeding is based upon his conviction that public moneys have been illegally drawn from the county treasury. If he is so satisfied he has a right to bring the action, there is no exception depriving him of this right, ██ if the money were voluntarily paid under a mistake of law.

Let us visualize the matter as it actually occurred. The defendant had a mortgage lien upon certain real estate upon which there were delinquent taxes which gave rise to the imposition of certain penalties. The defendant then proceeded to foreclose and out of the purchase money the sheriff paid into the county treasury the taxes and penalties. The penalties were commingled with the taxes and distributed to those subdivisions entitled thereto. When money reaches the treasury there is but one key that will unlock the door of the safe and permit its legal distribution. **Sec. 2674 GC** provides that no

money shall be paid from the county treasury except on the warrant of the county auditor, with certain exceptions. Therefore, before the treasurer can legally pay out the money it must be upon the voucher or a warrant of the auditor.

Sec. 2570 GC provides that the county auditor shall issue warrants on the treasurer for all moneys paid from such treasury, upon presentation of the proper order or voucher therefor. He shall not issue a warrant for the payment of any claim against the county unless allowed by the county commissioners, except where the amount due is fixed by law or is allowed by an officer or tribunal authorized by law to do so.

The statute now in question provides,

"Such penalty shall be refunded on order of the county auditor directed to the county treasurer."

But this provision of the section is unconstitutional and void and had no validity from the beginning; therefore the county auditor could not issue his warrant to the county treasurer to pay the money to the defendant. There would then be no way to get the money out of the treasury in view of the unconstitutionality in the provision, except on the allowance by the county commissioners as provided by §2570. The county commissioners, of course, took no part in the refund, and the auditor could not issue the warrant because his authority was invalid. It must follow that the money did not **legally** leave the treasury, and this aside from the fact that the statute permits the county prosecutor to bring an action under certain circumstances.

We therefore reach the conclusion that the Court below committed no error when he overruled the demurrer to the defendant's answer and rendered judgment in favor of the county.

Judgment affirmed. Cause remanded.

HORNBECK, PJ. & BARNES, J., concur.