SUMMERS et al., Appellants and Cross–Appellees,

v.

SLIVINSKY et al., Appellees and Cross–Appellants.

[Cite as *Summers v. Slivinsky* (2001), 141 Ohio App.3d 82.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 99 JE 15.

Decided Jan. 31, 2001.

*Harry W. White,* for appellants and cross-appellees.

*John DeFazio,* for appellees and cross-appellants.

WAITE, Judge.

Plaintiffs-appellants/cross-appellees Michael Summers et al. ("appellants") appeal from a judgment rendered by the Jefferson County Common Pleas Court, sustaining a motion for summary judgment filed by defendants-appellees/cross-appellants Geri Slivinsky et al. ("appellees"). For the following reasons, the

judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

## STATEMENT OF THE FACTS

Hilary Summers, a seventeen-year-old student at Buckeye Local High School, was a member of that school's cheerleading squad. In July 1997, she injured her shoulder at practice. She was prescribed pain medication and an immobilizer sling. After one week without attending practice, Hilary attempted to participate. Her pain returned. Her physician advised her not to practice and ordered physical therapy. In mid-August, Hilary, her mother Kelli Summers, and Geri Slivinsky, the varsity cheerleading advisor, all agreed that Hilary would begin some limited activities at her own pace.

On August 28, 1997, the squad was preparing for a cheerleading competition. The routine required certain cheerleaders to perform a back bend. Allegedly, Hilary informed Slivinsky that she had a physical therapy session in thirty minutes and that she wanted to ask her therapist whether she could do the back bend. Hilary contends that Slivinsky warned that if she did not do the back bend, she would be placed in the back row for the competition. Claiming that she felt intimidated by this, Hilary attempted the back bend, seriously reinjuring her shoulder.

Hilary, Kelli, and Michael Summers, Hilary's father, brought suit against Slivinsky, Buckeye Local School District, and Buckeye Local School Board. The complaint alleged that appellants suffered damages as a result of appellees' negligent and reckless conduct. Appellees filed a motion for summary judgment, claiming statutory immunity under R.C. 2744.01 *et seq.* On March 1, 1999, the trial court filed a journal entry sustaining appellees' motion for summary judgment. The court added a "correction" as to appellee Slivinsky on March 3, 1999.

Appellants filed their appeal on March 19, 1999. Appellees filed a cross-notice of appeal on March 26, 1999.

## MOTION TO DISMISS CROSS–APPEAL

As a preliminary matter, appellants have filed a motion with this court seeking to dismiss appellees' cross-appeal. Appellants argue that under App.R. 18(A), appellees should have filed a separate brief within twenty days after the date on which the clerk of courts mailed the notice required by App.R. 11(B). That notice was sent on April 28, 1999. Appellants argue that appellees did not properly request an extension for filing their cross-appeal brief and failed to file a brief in support of their cross-appeal until August 11, 1999, which was well after

the twenty-day deadline. For this reason, appellants contend that the cross-appeal should be dismissed.

Appellees filed a timely notice of cross-appeal within the time allowed by App.R. 4(B)(1). It is within our discretion to extend the time for filing briefs on appeal. App.R. 18(C). Appellees filed a motion for extension on May 18, 1999, which we granted. We also granted appellees' July 8, 1999 motion for extension. Appellees filed their brief, which contained their arguments in support of the cross-appeal, within the time as extended. Appellants' motion to dismiss is therefore overruled.

## APPELLANTS' ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

Appellants set forth three assignments of error on appeal. Appellees set forth one assignment of error on cross-appeal. Appellants' first two assignments of error and appellees' cross-assignment of error will be discussed together, as they have a common basis in law and fact. They allege respectively:

"The trial court erred in finding that the appellees were entitled to immunity from appellants' claims by virtue of R.C. 2744.03(A)(3).

"The trial court erred in finding that appellees were entitled to immunity from appellants' claims by virtue of R.C. 2744.03(A)(5)."

"The trial court erred in concluding that cheerleading by high school students, when performed on school property and under the supervision and direction of a school employee who serves as their advisor, is not a governmental function for purposes of conferring tort immunity on the school district under R.C. § 2744.01, et seq."

Ohio first recognized the concept of sovereign immunity in *State v. Franklin Bank of Columbus* (1840), 10 Ohio 91, 1840 WL 18. The doctrine was first applied to political subdivisions in *Dayton v. Pease* (1854), 4 Ohio St. 80, 1854 WL 63. In *Enghauser Mfg. Co. v. Eriksson Eng., Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, syllabus, the Ohio Supreme Court abolished the common-law doctrine of sovereign immunity with respect to municipal corporations. In response, the Ohio General Assembly enacted the Political Subdivision Tort Liability Act, codified as R.C. 2744.01 *et seq.*

In *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610, 614–615, the Ohio Supreme Court established a three-tiered analysis for determining whether a political subdivision is immune from liability. Under the first tier, R.C. 2744.02(A) grants broad immunity to political subdivisions. If immunity is established under R.C. 2744.02(A), such immunity is not absolute, however. Under the second tier of the analysis, one of five exceptions set forth in R.C. 2744.02(B) may serve to lift the blanket of general immunity. Our analysis does

not stop here, because under the third tier of the analysis, immunity may be "revived" if the political subdivision can demonstrate the applicability of one of the defenses found in R.C. 2744.03(A)(1) through (5). *Ziegler v. Mahoning Cty. Sheriff's Dept.* (2000), 137 Ohio App.3d 831, 739 N.E.2d 1237. These third-tier defenses are relevant only in determining the immunity of a political subdivision where a plaintiff has shown that a specific exception to immunity under R.C. 2744.02(B) applies. *Id.*

As opposed to the political subdivision itself, R.C. 2744.03(A)(6) provides a more limited immunity for employees of political subdivisions:

"In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, *the employee is immune from liability unless* one of the following applies:

"(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

"(b) *The employee's acts or omissions were* with malicious purpose, in bad faith, or in wanton or *reckless* manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term 'shall' in a provision pertaining to an employee." (Emphasis added.)

## STANDARD OF REVIEW

When reviewing a trial court's decision to grant summary judgment, we review the evidence de novo and apply the same standard used by the trial court. *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 543, 632 N.E.2d 1341, 1341–1342, citing *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Summary judgment under Civ.R. 56 is proper only when the movant demonstrates:

"(1) [N]o genuine issue as to any material fact remains to be litigated;

"(2) [T]he moving party is entitled to judgment as a matter of law; and

"(3) [I]t appears from the evidence that reasonable minds [could] come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132.

■ These factors make it clear that summary judgment should be granted with caution, being careful to resolve doubts in favor of the nonmoving party. *Id.*

The party seeking summary judgment has the initial burden of informing the court of the motion's basis and identifying those portions of the record tending to show that there are no genuine issues of material fact on the essential elements of the opposing party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. The movant must be able to point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the opposing party has no evidence to support its claim. *Id.* If this initial burden is met, the opposing party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

## GENERAL IMMUNITY (TIER ONE)

R.C. 2744.02(A)(1) provides:

"For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

In order to be entitled to a general veil of immunity under R.C. 2744.02(A), appellees must be a "political subdivision." Pursuant to R.C. 2744.01(F), "political subdivision" means "a municipal corporation, township, county, *school district*, or other body corporate and politic responsible for governmental activities in a geographical area smaller than that of the state * * *." (Emphasis added.) Appellees Buckeye Local School District and Buckeye Local School Board are thus protected under the first tier of the analysis.

## EXCEPTIONS TO IMMUNITY (TIER TWO)

■ Under the second tier, it must be determined whether an exception to general immunity applies. *Cater, supra.* R.C. 2744.02(B) provides five exceptions to immunity. R.C. 2744.02(B)(4) establishes an exception for loss caused by an employee's negligence when that loss "occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses * * *." As construed, R.C. 2744.02(B)(4) establishes liability only for loss resulting from the maintenance of governmental property. *Cook v. Hubbard Exempted Village*

*Bd. of Edn.* (1996), 116 Ohio App.3d 564, 570, 688 N.E.2d 1058, 1062; *Hall v. Ft. Frye Loc. School Dist. Bd. of Edn.* (1996), 111 Ohio App.3d 690, 695, 676 N.E.2d 1241, 1244–1245. The record indicates that the cheerleading practice in question took place within a J.C. Penney store at a local mall and not within a government building. There is nothing in the record indicating that the injuries were the result of a building maintenance problem relating to a government building. Therefore, R.C. 2744.02(B)(4) does not serve as an exception to appellees' statutory immunity.

The only other exception to immunity that might apply is R.C. 2744.02(B)(2), which states: "[E]xcept as otherwise provided * * *, *political subdivisions are liable for injury,* death, or loss to person or property *caused by the negligent performance of acts by their employees with respect to proprietary functions* of the political subdivisions." (Emphasis added.)

Assuming *arguendo* that appellee Slivinsky was an employee of the school district, we must determine whether the cheerleading practice was a proprietary or governmental function. If the activity was a governmental function, the school district and school board are immune from liability and our analysis is complete as to those entities. If the activity was a proprietary function, we must further determine whether immunity is revived through one of the provisions listed in R.C. 2744.03(A)(1) through (5).

The trial court determined that the cheerleading practice in question constituted a proprietary function. This decision was partially based in its analysis that cheerleading is not an activity in all respects exclusive to schools. The trial court concluded, however, that R.C. 2744.03(A)(3) and (5) applied to reinstate immunity. Appellants' argument assumes that the cheerleading practice falls under the definition of a proprietary function, but contends that R.C. 2744.03(A)(3) and (5) do not apply. Appellees insist that the cheerleading practice was a governmental function and that no further analysis is necessary to establish immunity. We find appellees' argument persuasive.

R.C. 2744.01(C)(1) provides:

" 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

"(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

"(b) A function that is for the common good of all citizens of the state;

"(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily

engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function."

R.C. 2744.01(C)(2) provides a nonexhaustive list of governmental functions. Among the examples is "[t]he provision of a system of public education." R.C. 2744.01(C)(2)(c).

R.C. 2744.01(G)(1) states:

" 'Proprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

"(a) The function is not [a governmental function];

"(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons."

R.C. 2744.01(G)(2) provides examples of proprietary functions. Such examples include the operation of hospitals, cemeteries, utilities, sewer systems, bands, orchestras, and stadiums.

The Ohio Supreme Court recently held that when the political subdivision at issue. is not one of those mentioned in R.C. 2744.01(F), the exceptions to immunity found in R.C. 2744.02(B) "should be construed in a way that leads to a finding of immunity for only the central core functions of the political subdivision." *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 560, 733 N.E.2d 1141, 1149. The logical corollary to this principle is that if the political subdivision is one of those specifically listed in R.C. 2744.01(F), the exceptions to immunity found in R.C. 2744.02(B) should be construed more broadly. School districts are one of the political subdivisions specifically listed in R.C. 2744.01(F). Therefore, R.C. 2744.02(B) should be construed liberally in its favor.

While at first blush it can be argued that cheerleading is not compulsory to a system of education, it is clearly some part of the school system's educational program. Bearing this fact in mind, coupled with the fact that the immunities provided under R.C. 2744.01(F) must be construed liberally in favor of the school district and board of education, we turn to a review of the current case law.

In *Neelon v. Conte* (Nov. 13, 1997), Cuyahoga App. No. 72646, unreported, 1997 WL 711232, the Eighth District Court of Appeals broadly construed R.C. 2744.02(B)(2) when it held that a cheerleading event held in a private home was governmental function because it was part of the school board's provision of a system of public education.

Other courts have also found that high school cheerleading events fall under the governmental function umbrella. In *Anderson v. Indian Valley School Dist.*

*Bd. of Edn.* (Mar. 22, 1999), Tuscarawas App. Nos.1998AP122, 1998AP123 and 1998AP124, unreported, 1999 WL 175218, a student was injured while attending a cheerleader-sponsored pep rally at a local park and this was determined to be a governmental function for purposes of statutory immunity. The aforementioned cases are in keeping with the general rule that the organization of school-sponsored athletic teams is a governmental function covered under political subdivision immunity. Annotation, Modern Status of Doctrine of Sovereign Immunity as Applied to Public Schools and Institutions of Higher Learning (1970), 33 A.L.R.3d 703, 743.

█ While there are certainly instances of professional, paid cheerleading squads that can be compared to the current situation, this is not the customary situation. We are in agreement with the holdings of *Neelon* and *Anderson*, *supra*, and hold that a school-sponsored cheerleading practice is part of a school district's broad governmental function of providing public education. Therefore, it does not fall within the exception to political subdivision immunity under R.C. 2744.02(B)(4). This said, there is no need to continue on to the third tier of the immunity analysis under R.C. 2744.03(A). As earlier discussed, further analysis is necessary only if the action involves a proprietary, rather than a governmental, function, which is not the case here. As we hold that appellees' cross-assignment of error is meritorious and appellants' first two assignments are without merit, the decision of the trial court with respect to appellees Buckeye Local School District and Buckeye Local Board of Education is affirmed.

### APPELLANTS' ASSIGNMENT OF ERROR NUMBER THREE

Appellants' third assignment of error alleges:

"The trial court erred in finding that appellee, Geri Slivinsky, was not reckless."

█ Appellants argue that employees of political subdivisions are subject to a more limited immunity under R.C. 2744.03(A)(6), which is separate from the immunity provided to the political subdivision itself. Appellants argue that employees are not immune for acts or omissions that are done with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellants contend that they presented evidence that created an issue of material fact as to appellee Slivinsky's recklessness and, thus, summary judgment should not have been granted with respect to her. We agree with this contention.

█ R.C. 2744.03(A)(1) through (5) pertain to immunities granted to a political subdivision based on certain actions by its employees. R.C. 2744.03(A)(6) discusses the immunities enjoyed by the employees themselves. This section states that employees of political subdivisions are immune from liability *unless*

"[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless manner." The term "reckless" means that the conduct was committed " 'knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 96, 559 N.E.2d 699, 700, fn. 2, quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. Whether conduct is reckless, in the context of an employee claiming immunity under R.C. 2744.03(A)(6), is typically a question for the trier of fact. *Singer v. Fairborn* (1991), 73 Ohio App.3d 809, 819, 598 N.E.2d 806, 813.

Appellants alleged both in their complaint and in their response to appellees' motion for summary judgment that Slivinsky's conduct was reckless. Appellants presented evidence, which, if believed, could establish that Slivinsky told Hilary Summers either to do a back bend or be consigned to the back row of the cheerleading team at the competition, knowing that Hilary was still suffering from a serious shoulder injury. Appellants also presented evidence that Hilary was somehow intimidated into attempting the maneuver. While the record as it currently exists is sketchy as to whether the evidence presented goes beyond the standard of negligence to reach "recklessness," appellants have raised a question of fact sufficient to overcome summary judgment. It should be left to the jury to determine whether Slivinsky's behavior rose to the level of recklessness needed to overcome the immunity provided by R.C. 2744.03(A)(6).

Although appellees' motion seeking summary judgment contained waiver and release forms signed by both Hilary Summers and her mother, the significance of these forms was not argued in appellees' brief. Such forms do not *necessarily* bar appellants from recovery. The specific terms of waivers and releases are typically questions for a jury, particularly if it is alleged that they are ambiguous, overly generalized, or encompass conditions not contemplated by the parties. *Tanker v. N. Crest Equestrian Ctr.* (1993), 86 Ohio App.3d 522, 525, 621 N.E.2d 589, 590–591.

We conclude that appellants' third assignment of error has merit and that summary judgment was erroneously granted to appellee Slivinsky. We reverse the judgment of the trial court only as to appellee Slivinsky, affirm the decision on other grounds as to appellees Buckeye Local School District and Buckeye Local School Board, and remand the cause for further proceedings consistent with this court's opinion.

*Judgment accordingly.*

Cox, P.J., concurs.

Vukovich, J., dissents.

Vukovich, Judge, dissenting.

I respectfully dissent from the opinion of the majority because I do not agree with the majority's conclusion that cheerleading is a governmental function.

*Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 733 N.E.2d 1141, involved a dispute concerning the eligibility of a hog named "Big Fat" to compete in a hog show held at the Greene County Fair. After Big Fat was named "Reserve Grand Champion," the second highest award for a hog at the show, the Greene County Agricultural Society's suspicion of the hog's ineligibility led to an investigation of its owner. The investigation resulted in sanctions against Big Fat's owner. The society filed suit to enforce the sanctions. Big Fat's owner filed a counterclaim contending that the society violated her due process rights and defamed her. The trial court sustained the society's motion for summary judgment based upon sovereign immunity. The court of appeals affirmed the trial court's decision. The sole issue before the Ohio Supreme Court was whether the society was entitled to immunity under R.C. Chapter 2744. It held that immunity did not apply. The court determined that the society was not engaging in governmental functions because its actions were not for the common good of all citizens of the state and were the type customarily engaged in by nongovernmental persons. It concluded that, while conducting a county fair is something that is not customarily engaged in by nongovernmental persons, conducting a livestock competition is. The court further noted that the activities of the society were not described in R.C. 2744.01(C)(2).

While I recognize that *Greene* was decided by only a plurality of the Ohio Supreme Court, I agree with its rationale. A review of R.C. 2744.01(C)(1) leads to the conclusion that cheerleading cannot be considered a governmental function. It cannot be said that cheerleading is a function imposed upon the state as an obligation of sovereignty. It is not a function that is for the common good of *all* citizens of the state. Moreover, cheerleading is an activity that is engaged in by nongovernmental actors. The Los Angeles Laker Girls and the Dallas Cowboy Cheerleaders are two common examples. Therefore, cheerleading could only be considered a governmental function if it is described in R.C. 2744.01(C)(2). Among the examples of governmental functions provided by that section is the provision of a system of public education. The majority holds that cheerleading is at least a part of the school system's education program and must, therefore, be a governmental function. However, educational value alone is not enough to convert what otherwise would not be a governmental function into something that is a governmental function. *Greene, supra,* at 560, 733 N.E.2d at 1148–1149.

. Under the majority's approach, anything a school system does could be considered a governmental function. The legislature did not intend this result. If it did, it would have so stated explicitly. Instead, the legislature included as a governmental function "[t]he provision of a system of public education." R.C. 2744.01(C)(2)(c). It included as proprietary functions the operation of public stadiums, bands, or orchestras. R.C. 2744.01(G)(2)(e). These proprietary functions are performed by virtually every school district. In *Greene*, the Ohio Supreme Court held that livestock competitions are proprietary functions performed within the government function of holding a county fair. Likewise, school districts operating a stadium, band, or orchestra are performing proprietary functions, even though those functions aid in the provision of education. I agree with the trial court's observation that cheerleading is not distinguishable from bands or orchestras.

My position would be different if the record revealed that Summers received academic credit for her participation in cheerleading. In *Angelot v. Youngstown Bd. of Edn.* (Sept. 18, 1998), Mahoning App. No. 96CA90, unreported, 1998 WL 668158, this court held that the school board was immune from liability to a student who was injured while moving volleyball equipment during a regularly scheduled physical education class. That class was part of the regular curriculum and was, thus, part of the provision of education. However, to construe cheerleading, an *extracurricular* activity, as the provision of a system of public education is to declare also that operating a stadium, band, or orchestra is the provision of a public education system. Those activities, which the legislature clearly considered to be proprietary, would thus become governmental by virtue of a school district's performing them. No such blanket immunity exists for schools.

The effect of the majority's sweeping interpretation of "governmental function" is to leave many who should be compensated under our system for their injuries without any legal recourse. Section 16, Article I of the Ohio Constitution provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law * * *." Notwithstanding this provision, the legislature chose to provide political subdivisions with immunity for certain conduct. If that immunity is to be expanded, the General Assembly, not the courts, is the proper forum.

For these reasons, I respectfully dissent from the majority opinion.