[Cite as *Wilson v. McCormack*, 2017-Ohio-5510.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| JAIMIE WILSON, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2016-A-0039** |
| DONALD MCCORMACK, | : | |
| Defendant, | : | |
| JEFFERSON AREA LOCAL SCHOOL DISTRICT, et al., | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CV 0351.

Judgment: Reversed and remanded.

*Michael D. Goldstein,* Goldstein & Goldstein, Co., LPA, 55 Public Square, Suite 2075, Cleveland, OH 44113, and *Christian R. Patno,* McCarthy, Lebit, Crystal & Liffman Co., 101 West Prospect Avenue, Suite 1800, Cleveland, OH 44115 (For Plaintiffs-Appellees).

*Mark Landes* and *Robert C. Perryman,* Isaac, Wiles, Burkholder & Teetor, LLC, Two Miranova Place, Suite 700, Columbus, OH 43215 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Jefferson Area Local School District - Board of Education, appeals the judgment of the Ashtabula County Court of Common Pleas, denying its Motion for Judgment on the Pleadings based on the immunity

afforded by R.C. 2744.02(B). The issue before this court is whether a school district's hiring, retention, and/or supervision of a high school basketball coach is a governmental function for the purposes of sovereign immunity. For the following reasons, we reverse the decision of the court below.

{¶2} On June 12, 2015, plaintiffs-appellees, Jaimie Wilson and Elizabeth Ziemski, filed a Complaint in the Ashtabula County Court of Common Pleas against defendant-appellant, Jefferson Area Local School District - Board of Education, and others.[1] The Complaint alleged, inter alia, that Donald McCormack sexually assaulted both plaintiffs while employed by the Jefferson Board of Education as the assistant girls' basketball coach at Jefferson High School.

{¶3} The plaintiffs raised claims against the Board of Education for the negligent hiring, retention, or supervision of McCormack (Count Twelve), the failure to report abuse as required by R.C. 2151.421 (Count Thirteen), for McCormack's conduct under various theories of vicarious liability (Count Fourteen), and wanton and reckless behavior in failing to take reasonable actions to prevent the sexual assaults (Count Fifteen).

{¶4} On July 23, 2015, the Board of Education filed its Answer, raising the affirmative defense of statutory immunity under R.C. 2744.01 et seq.

---

[1]. Other defendants, not parties to this appeal, include: Donald McCormack, Steven Locy, Rodney Holmes, the Ashtabula Star Beacon, Newspaper Holdings, Inc., Ed Looman, and Neil Frieder. The original Complaint identified the Jefferson Area Local School District as a defendant. As part of its September 10, 2015 Motion for Judgment on the Pleadings, the Jefferson Area School District argued that "a school district is not *sui juris*; rather, it is the board of education that must be sued." An Amended Complaint was filed on October 16, 2015, with leave of the trial court, to amend the name of this defendant by adding the "specifier" Board of Education.

{**¶5**}    On September 10, 2015, the Board of Education filed a Motion for Judgment on the Pleadings[2], based, in part, on the position that it "is entitled to statutory immunity on all claims under R.C. § 2744.02(A)(1)."

{**¶6**}    On October 6, 2015, the plaintiffs filed a Memorandum in Opposition to the Board of Education's Motion for Judgment on the Pleadings.

{**¶7**}    Thereafter, the Board of Education filed a Motion for Leave to File Reply in Support of Motion for Judgment on the Pleadings, *Instanter* on October 19, 2015, and a Supplement to Motion for Judgment on the Pleadings on December 7, 2015.

{**¶8**}    On July 15, 2016, the trial court issued a Judgment Entry in which it granted, in part, the Motion for Judgment on the Pleadings and overruled the Motion for Leave to File Reply in Support of Motion for Judgment on the Pleadings, *Instanter*.

{**¶9**}    The trial court dismissed Count Thirteen as it pertained to plaintiff Wilson for the reason that R.C. 2151.421 (the mandatory reporting statute) was not enacted until after McCormack's abuse of Wilson had ended as averred in the Complaint and the statute did not apply retroactively.

{**¶10**}    The trial court denied the balance of the Motion for Judgment on the Pleadings.  With respect to the Board of Education's claim of statutory immunity, the court held "that providing a sports team is incidental to providing a public education" and, therefore, constitutes a proprietary function to which immunity does not attach.

---

[2]. This Motion was jointly filed with Defendants Locy and Holmes and asserted other grounds for judgment not relevant to this appeal.

**{¶11}** On August 1, 2016, the Board of Education filed its Notice of Appeal.[3] *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus ("[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)"). On appeal, the Board of Education raises the following assignment of error:

**{¶12}** "[1.] The trial court erred in denying Appellant Jefferson Area Local School District's motion for judgment on the pleadings because its sports teams are part of its provision of a public education system and thus a governmental function under R.C. 2744.01(C)(2)(c)."

**{¶13}** Civil Rule 12(C) provides as follows: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

**{¶14}** "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. * * * Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." (Citations omitted.) *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). Accordingly, our

---

3. Locy and Holmes were identified as appellants in the Notice of Appeal but were subsequently dismissed therefrom by this court on November 7, 2016.

4

standard of review is de novo. *Oko v. Lake Erie Corr. Inst.*, 175 Ohio App.3d 341, 2008-Ohio-835, 886 N.E.2d 933, ¶ 15 (11th Dist.).

{¶15} The narrow issue before this court is whether the Board of Education enjoys immunity of suit with respect to its employment of Donald McCormack as the assistant high school girls' basketball coach.

{¶16} A school district, by virtue of being a "political subdivision" of the State of Ohio, "is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.01(F) and R.C. 2744.02(A)(1).

{¶17} The plaintiffs claim the Board of Education may be liable under an exception to the immunity granted political subdivisions "for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). The Board of Education counters that its provision of a high school basketball team constitutes a governmental rather than a proprietary function, thus rending the exception inapplicable.

{¶18} Relevant to the facts of the present case, "[t]he provision of a system of public education" constitutes a "governmental function." R.C. 2744.01(C)(2)(c).

{¶19} In addition, a "governmental function" may include any function that satisfies one of the following:

5

(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the state;

(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

R.C. 2744.01(C)(1).

{¶20} Relevant to the facts of the present case, a "'[p]roprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

R.C. 2744.01(G)(1).

{¶21} It is the Board of Education's position "that sports and extracurricular activities are so intimately related with the school experience that

6

they constitute the provision of a public education" as contemplated by R.C. 2744.01(C)(2)(c).

{¶22} The Board of Education cites to several cases in which it is presupposed that the provision of extracurricular sports teams by a school district constitutes a governmental function. Although, as plaintiffs point out, the issue of whether the provision of sports teams by a school district was not being challenged in these cases, they nevertheless constitute persuasive authority that such activity is a governmental function.

{¶23} In *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, the plaintiff was injured during school baseball practice. *Id.* at ¶ 4-5. The Ohio Supreme Court recognized that the plaintiff's claims were directed against the "baseball coach employed by the school district, who acted within the scope of his employment, and that '[t]he provision of a system of public education' as well as the 'operation of any school athletic facility, school auditorium, or gymnasium' are governmental functions pursuant to R.C. 2744.01(C)(2)(c) and (u)." *Id.* at ¶ 10. The court proceeded to analyze the plaintiff's claims under R.C. 2744.02(B)(4) ("political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function"). "The allegations contained in [the plaintiff's] amended complaint match this provision because a claim sounding in negligence is asserted against Howland Local Schools, arising from

7

an injury that occurred at a school gymnasium used in connection with the performance of a governmental function." *Id.* at ¶ 11.

{¶24} Similarly, this court in *Schnarrs v. Girard Bd. of Edn.*, 168 Ohio App.3d 188, 2006-Ohio-3881, 858 N.E.2d 1258 (11th Dist.), treated the claims of a member of the girls' varsity basketball team who was injured during practice as claims based on the negligence of a school district employee (the coach) in connection with the performance of a governmental function arising under R.C. 2744.02(B)(4). *Id.* at ¶ 17. *See also Golden v. Milford Exempted Village School Bd. of Edn.*, 12th Dist. Clermont No. CA2008-10-097, 2009-Ohio-3418, ¶ 2 (the plaintiff was sexually assaulted prior to basketball practice); *Marcum v. Talawanda City Schools*, 108 Ohio App.3d 412, 414, 670 N.E.2d 1067 (12th Dist.1996) (the plaintiff was assaulted during a student council meeting).[4]

{¶25} Other Ohio courts which have considered the specific issue of whether an extracurricular activity constitutes a governmental or proprietary function support the conclusion that the provision of sports teams is a governmental function and/or inherent in the provision of a system of public education, as is employment of persons to administer such activities.

{¶26} In *Perkins v. Columbus Bd. of Edn.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, the court recognized that "[t]he provision of public education is specifically identified as a governmental, rather th[a]n a proprietary, function pursuant to R.C. 2744.01(C)(2)(c)," and that "[t]his extends to most

---

[4]. It should be noted that resolution of these cases ultimately turned on the applicability of immunities afforded to political subdivisions contained in Revised Code Chapter 2744.03, the provisions of which have yet to be considered in the course of the present proceedings. As noted by the trial court, the exceptions contained in R.C. 2744.03 typically require the "development of facts through evidence" and, therefore, are properly raised through a motion for summary judgment rather than judgment on the pleadings.

school activities and administrative functions of the educational process, even if not directly comprising part of the classroom teaching process." *Id.* at ¶ 12 (cases cited); *see also DiMartino v. Poland Local School Dist.*, 7th Dist. Mahoning No. 10 MA 19, 2011-Ohio-1466, ¶ 29 ("[s]chool bands are * * * an extension of the school's music program, and, hence, a part of the provision of a system of public education"); *Summers v. Slivinsky*, 141 Ohio App.3d 82, 90, 749 N.E.2d 854 (7th Dist.2001) ("high school cheerleading events fall under the governmental function umbrella"); *Neelon v. Conte*, 8th Dist. Cuyahoga No. 72646, 1997 WL 711232, 2 (Nov. 13, 1997) ("the Board was engaged in a governmental function-the provision of a system of public education"-by sanctioning an event for cheerleaders at the school principal's home).

**{¶27}** Also relevant are cases where the courts have considered whether a particular activity "is so fundamental to the provision of a system of public education that it cannot be considered apart from the governmental function of 'providing a system of public education.'" *Bucey v. Carlisle*, 1st Dist. Hamilton No. C-090252, 2010-Ohio-2262, ¶ 16; *Perkins v. Columbus Bd. of Edn.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, ¶ 12 ("[t]he provision of public education * * * extends to most school activities and administrative functions of the educational process, even if not directly comprising part of the classroom teaching process"). In *Bucey,* the court recognized that the hiring of teachers and administrators is an activity without which "the governmental function of 'providing a system of public education' cannot be accomplished." *Bucey* at ¶ 16.

9

**{¶28}** Finally, as the Board of Education points out, the provision of sports teams by a school district is regulated by the Ohio Revised Code. For example, students must maintain a minimum grade point average to participate in such activities pursuant to R.C. 3313.535. Likewise, participation in sports teams must be made available, under certain conditions, to students enrolled in nonpublic schools and students receiving home instruction, i.e. home-schooled, pursuant to R.C. 3313.5311 and R.C. 3313.5312 respectively.

**{¶29}** Furthermore, the conclusion that the Board of Education enjoys immunity in connection with the provision of its girls' basketball team is also supported by the line of cases finding that the provision of transportation and school lunch programs constitute governmental functions. *Taylor v. Boardman Twp. Local School Dist. Bd. of Edn.,* 7th Dist. Mahoning No. 08 MA 209, 2009-Ohio-6528, ¶ 21 ("R.C. 3313.813(C) does obligate local boards of education to establish food service programs if certain basic conditions apply"; thus "the provision of lunches is generally a necessary part of the provision of a system of public education"); *Day v. Middletown-Monroe City School Dist. Bd. of Edn.*, 12th Dist. Butler No. CA99-11-186, 2000 WL 979141, 3 (July 17, 2000) ("[t]he decision of the Board to undertake transporting students and assign bus stops is unquestionably a governmental function, as that decision directly relates to the provision of a system of public education" in light of R.C. 3327.01 which "mandates transportation be provided by city, local, and exempted village school districts for all resident students in grades kindergarten through eight who live within a specified distance from their assigned school").

10

**{¶30}** The plaintiffs in the present case argue that *Summers* was overruled in *Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523 (7th Dist.). However, *Allied Erecting* did not overrule the holding in *Summers* that the sponsorship of cheerleading events constitutes a governmental function. Rather, the court in *Allied Erecting* took exception with conclusion that R.C. 2744.02(B) should be construed liberally in favor of political subdivisions defined as such by R.C. 2744.01(F). *Id.* at ¶ 47.[5] Instead of promoting a liberal or narrow construction of a political subdivision's immunity (at least those specifically listed in R.C. 2744.01(F)), the court reaffirmed the approach based on the statutory language of R.C. Chapter 2744: "When deciding whether a political subdivision is engaged in a governmental or proprietary function pursuant to R.C. 2744.01(G)(1)(b), a court should look to the particular activity the subdivision is engaged in and decide whether that particular activity is of the type customarily engaged in by nongovernmental persons." *Id.* at ¶ 52.

**{¶31}** This court takes no exception with the conclusion reached by *Allied Erecting* which does not alter the outcome of the present case. Here, the provision of a public system of education is expressly defined as a governmental function by R.C. 2744.01(C)(2)(c), and, for the reasons set forth above, the hiring, retention, and supervision of a high school basketball coach is an inherent part of that activity.

**{¶32}** The sole assignment of error is with merit.

---

[5]. This conclusion was based upon an erroneous interpretation of the Ohio Supreme Court's decision in *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 560, 733 N.E.2d 1141 (2000), the details of which are not necessary to consider here.

11

{¶33} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, denying the Board of Education judgment on the pleadings based on the immunity afforded by R.C. 2744.02(B), is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the appellees.

TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.