**LEACH, Exr., Appellant,**

v.

**CITY OF DAYTON, Appellee.**

[Cite as *Leach v. Dayton* (1994), 98 Ohio App.3d 467.]

Court of Appeals of Ohio,
Montgomery County.

No. 14244.

Decided Nov. 9, 1994.

*Richard Hempfling,* for appellant.

*Neil F. Freund,* for appellee.

WILSON, Judge.

This wrongful death case was filed by the plaintiff-appellant, Charlotte B. Leach, as executor of the estate of Carl W. Leach III, deceased, against the defendant-appellee, city of Dayton, Ohio.

The original complaint contained the following allegation:

"On July 29, 1990 Plaintiff's decedent died as a result of injuries sustained while operating a motorcycle in a southerly direction on Wayne Avenue, when at approximately 9:52 p.m., decedent's motorcycle struck the City of Dayton front end loader negligently abandoned by City employees on the major thoroughfare, Wayne Avenue, without any warning devices or signals whatsoever, near a broken, inoperable City of Dayton street light in the No Parking Lane."

On August 20, 1992 the plaintiff moved for summary judgment "on the issues of whether Defendant was negligent per se and whether Defendant's actions on July 29, 1990 also constituted common-law negligence."

The plaintiff's motion for summary judgment was overruled in October 1992 along with the defendant's motion for summary judgment, which was based upon the decedent's alleged failure to stop within his assured clear distance ahead.

On September 3, 1993 Dayton filed a motion *in limine* requesting an order "preventing Plaintiff from arguing or suggesting to the jury that the City of Dayton possessed an affirmative duty to place warning devices such as cones, barricades or flashers around the disabled front-end loader."

This case was tried before a jury beginning September 7, 1993. The motion *in limine* was argued in chambers and granted immediately prior to jury selection on the first day of the trial.

Dayton moved for a directed verdict at the close of the plaintiff's evidence. The court in effect found that Dayton's possible liability was limited to the breach of the duty to keep its streets "open, in repair, and free from nuisance" as provided for in R.C. 723.01 and R.C. 2744.02(B)(3). The court further found that no nuisance was involved and that Dayton was immune from liability.

The plaintiff has appealed from the judgment entry filed September 28, 1993 sustaining Dayton's motion for a directed verdict and dismissing plaintiff's case with prejudice.

█ There are five assignments of error. The first is:

"The trial court erred in overruling plaintiff's motion for summary judgment."

The accident in this case occurred approximately an hour after sunset.

Plaintiff's motion for summary judgment in effect asked the court to declare that Dayton's failure to have lights on the loader and other warning devices was negligence *per se* and common-law negligence.

Civ.R. 56(C) provides that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Liability in this case hinges on issues of negligence, contributory negligence and proximate cause. Plaintiff's motion for summary judgment was directed only to the issue of Dayton's negligence. It, in effect, merely asked for a declaration that Dayton was negligent. Civ.R. 56 does not appear to provide for the filing of a motion seeking the relief requested by the plaintiff.

The first assignment of error is overruled.

█ The second assignment of error provides:

"The trial court erred in granting defendant's motion in limine, and precluding plaintiff from offering evidence at trial regarding the lack of cones, flares, barricades and other warning devices around defendant's loader at the time of the accident."

The defendant's motion *in limine* was not sustained by way of a written entry that is part of the original papers in this case. However, it is clear from the transcript that the motion *in limine* was granted because of Dayton's argument that the placing of warning devices around the front-end loader was not a relevant issue in the case because "the City has full and complete immunity for discretionary acts."

The doctrine of municipal immunity was partially abolished in *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228. The second paragraph of the syllabus in that case provides, in part:

"Under the decision abolishing municipal immunity, no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion."

The exception quoted above was in effect codified in R.C. 2744.03(A)(3). It provides:

"(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

Dayton argued and the trial court agreed that the decision not "to place warning devices such as cones, barricades or flashers around the disabled front-end loader" was a decision involving discretion, which relieves Dayton from liability for the decision of its employees not to act.

Dayton contends that the facts in the case before us are analogous to the facts in *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808. The syllabus in that case states:

"Where the installation of traffic control devices by a municipality is discretionary pursuant to the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways, the municipality is immune from tort liability for damages allegedly resulting from the absence of such devices."

In *Winwood* a pedestrian was killed when she was struck by a motor vehicle while she was crossing an intersection where there was no traffic light. The court held that Dayton's decision not to install a traffic light at the intersection was "a planning function, involving basic policy considerations and the exercise of a high degree of official discretion."

The decision to not place warning devices near Dayton's front-end loader did not involve the decision of a Dayton employee "with respect to policy-making planning, or enforcement powers." *Howe v. Jackson Twp. Bd. of Trustees* (1990), 67 Ohio App.3d 159, 586 N.E.2d 217. *Davis v. McClain* (Nov. 27, 1992), Carroll App. No. 614, unreported, 1992 WL 356163. Reasonable minds could find that there was no high degree of official judgment or discretion involved in the decision.

The second assignment of error is sustained.

■ The critical assignment of error in this appeal is the third, in which the plaintiff complains that Dayton's motion for a directed verdict should not have been granted. The material facts in this case are not in dispute.

Fifth Street in Dayton between Wayne Avenue and Patterson Boulevard was blocked off on July 29, 1990 for a beach party. Early on that date Dayton had trucked in a large amount of sand, which was spread on Fifth Street for volleyball courts.

City employees returned to the scene with their equipment at about 7:00 p.m. to clean up the sand. Upon return to the scene the employees found the intersection of Wayne Avenue and Fifth Street to be partially blocked because of the operation and the event. Wayne Avenue has two lanes for northbound traffic and two lanes for southbound traffic. At the intersection of Fifth and Wayne, the right-hand lane of southbound Wayne Avenue was blocked off to the south of the intersection, where Dayton dump trucks and other vehicles, including Dayton's front-end loader, were parked waiting to commence cleanup operations.

At approximately 8:00 p.m. Harold Clay, a Dayton employee, attempted to start the loader in order to take it to begin removing sand. The motor on the loader would not start. Clay notified his supervisor, Steve Corley, who was also unsuccessful in starting the loader. Clay and Corley then went to the maintenance yard to get another loader and a battery charger. They returned to the vicinity of the loader about 8:30 p.m. Corley again attempted to start the loader with no success. Corley then contacted the guard shack at about 8:45 p.m. for a tow truck to tow the loader. No lights were on the loader. Nor were any other efforts made to warn motorists of the loader's presence prior to the accident.

The trial court granted the defendant's motion for a directed verdict at the close of the plaintiff's evidence, stating that "I don't think that we have a nuisance in the street." In arriving at this decision the trial court relied on *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242.

In that case ten-year-old Michael Williamson was struck by Pavlovich's car on the street in front of Michael's school. At 3:00 p.m. on the date of the accident school buses were parked in front of the school and cars were parked opposite the buses in front of "No Parking" signs. Traffic in front of the school was congested and moving slowly. Pavlovich was driving in the center of the street in order to avoid the illegally parked cars. In attempting to cross the street Michael came from behind a bus and was struck by the Pavlovich car. Michael and his mother sued Pavlovich and the city of Cleveland, alleging that the illegally parked cars constituted a nuisance.

The trial court granted Cleveland's motion for a directed verdict at the close of plaintiff's case. The court of appeals reversed, finding that "reasonable minds could find that recurring traffic congestion from the cars parked on both sides of the street in front of the school was a nuisance." The appellate court also found that "jurors could properly find that the city failed to exercise reasonable care to eliminate this recurring problem." The Supreme Court of Ohio reversed the court of appeals. The first paragraph of the syllabus provides:

"Pursuant to R.C. 723.01, illegally parked cars located on the side of a highway, which contribute generally to traffic congestion, do not constitute a nuisance giving rise to municipal liability."

In the body of the opinion the court stated that the parked cars were not a nuisance "since they were only parked temporarily along the side of the roadway, and did not significantly obstruct or impede the flow of traffic." The street in front of the school was a "two-lane road."

There are significant differences between the facts in that case and the facts in the case before us. It was Dayton and not the public in general which parked its vehicles in a no-parking area. Although it is not entirely clear, it appears that the parked cars in Cleveland were not blocking either of the two lanes of traffic on the street in front of the school. It was daylight in Cleveland. The parked vehicles there were clearly discernible and required no devices to warn the public that they were parked in front of the school.

In this case, the front-end loader had been parked at the location where the accident occurred, but prior thereto it had failed to start and had been left there because it could not be moved. Reasonable minds could conclude that the front-end loader had been abandoned when the collision occurred. "A vehicle blocking a road or sidewalk may also constitute a nuisance if it has been abandoned and left on a public highway." *Walder v. Dayton* (June 10, 1991), Montgomery App. No. 12274, unreported, 1991 WL 108734.

We conclude from the facts in the case before us that reasonable minds could conclude that Dayton failed in its duty to keep the southbound curb lane of Wayne Avenue open or free from nuisance during the evening of July 29, 1990.

The third assignment of error is sustained.

In her last two assignments of error the plaintiff complains that the trial court would not permit two of her expert witnesses to testify. The assignments of error state:

"The trial court erred in determining that opinion testimony by plaintiff's accident reconstruction expert regarding the speed of Carl Leach's motorcycle was inadmissible.

"The trial court erred in not permitting plaintiff's expert witness regarding nighttime visibility to offer any opinions in this case."

In our view the fourth and fifth assignments of error are made moot by our ruling on the third assignment of error. App.R. 12(A)(1)(c). The last two assignments of error are overruled.

We reverse and remand for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY, P.J., and WOLFF, J., concur.

RICHARD K. WILSON, J., retired, of the Second Appellate District, sitting by assignment.