OPINION
{¶ 1} Appellants, Bruce Willis and Darlene Willis, appeal the May 17, 2004 decision of the Common Pleas Court of Union County granting summary judgment in favor of appellee, the City of Marysville.
 {¶ 2} The instant action arose when Bruce Willis ("Bruce") was operating his motorcycle on U.S. Route 33 in the City of Marysville on August 30, 2001. Bruce was traveling to his home from his place of employment at the Ohio Rehabilitation Services Commission. As Bruce was traveling on U.S. 33 he came upon a large amount of grain that had been spilled on the road by a vehicle driven by Mark Stuthard, an employee of Commodity Specialists Company. The vehicle was operated under the placard of Ryder Logistics and Transportation. The grain covered the roadway in both lanes for a distance of approximately twenty to thirty feet. At the time Bruce approached this grain covered area of the roadway, Marysville police officers were on the scene. Bruce observed that traffic was slowed due to the grain on the roadway and the presence of police officers. Bruce also observed that cleaning equipment was being unloaded on the side of the roadway. When Bruce's motorcycle rode over the grain on the roadway it began to fishtail and he lost control of the motorcycle. As a result of the accident, Bruce suffered injuries to his right leg, knee and shoulder. Bruce underwent surgery on his shoulder to repair a rotator cuff tear and the residual effects of his injury are permanent.
 {¶ 3} On July 21, 2003, Willis filed a complaint for damages against Commodity Specialists Company, Ryder Logistics and Transportation, Mark Stuthard and the City of Marysville. Commodity Specialists Company, Ryder Logistics and Transportation and Mark Stuthard settled all claims with Willis and are not parties to the instant appeal. In the complaint, Bruce and Darlene Willis claimed the City of Marysville violated its statutory and common law duty to keep the road free from nuisance and obstructions. The City of Marysville filed a motion for summary judgment on February 9, 2004 claiming that it was immune from liability pursuant to Chapter 2744 of the Ohio Revised Code. The trial court found that the City of Marysville was immune from liability and granted summary judgment in its favor on May 17, 2004. It is from this judgment that Bruce and Darlene Willis now appeal asserting the following assignment of error.
The trial court committed error in granting summary judgmentto appellee City of Marysville.
 {¶ 4} Bruce and Darlene Willis argue that the City of Marysville is liable for failing to keep its roadway free from nuisance and that the City is not immune from liability for such failure. They further argue that the actions of the Marysville police officers of allowing traffic to proceed through the nuisance did not cloak the City of Marysville with immunity.
 {¶ 5} We begin by noting that the standard for review of a grant of summary judgment is one of de novo review. Lorain Nat'lBank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129,572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 6} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, syllabus, 526 N.E.2d 798. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 360, 1992-Ohio-95,604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be granted. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 7} R.C. 723.01 provides the legislative authority of municipal corporations with regard to public grounds. At the time of Bruce's accident, the statute provided:[1]
 Municipal corporations shall have special power to regulatethe use of the streets. Except as provided in section 5501.49 ofthe Revised Code, the legislative authority of a municipalcorporation shall have the care, supervision, and control of thepublic highways, streets, avenues, alleys, sidewalks, publicgrounds, bridges, aqueducts, and viaducts within the municipalcorporation, and the municipal corporation shall cause them to bekept open, in repair, and free from nuisance.
 {¶ 8} The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, governs the liability or immunity from liability of a municipal corporation. The Ohio Supreme Court inCater v. City of Cleveland, 83 Ohio St.3d 24, 1998-Ohio-421,697 N.E.2d 610, held that the Act sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. First, R.C. 2744.02(A) sets forth the general rule of immunity for political subdivisions for the personal injuries or death of a person. Id. at 28. R.C.2744.02(A)(1) provides:
For the purposes of this chapter, the functions of politicalsubdivisions are hereby classified as governmental functions andproprietary functions. Except as provided in division (B) of thissection, a political subdivision is not liable in damages in acivil action for injury, death, or loss to persons or propertyallegedly caused by any act or omission of the politicalsubdivision or an employee of the political subdivision inconnection with a governmental or proprietary function.
As this section provides, immunity is not absolute, but is subject to the five exceptions to immunity listed in R.C.2744.02(B). Thus, once immunity is established under R.C.2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply.Cater, 83 Ohio St.3d at 28. The third tier of analysis provides for immunity to be reinstated if the political subdivision can successfully argue that one of the defenses provided in R.C.2744.03 applies. Id.
 {¶ 9} Bruce and Darlene Willis argue that the City of Marysville lost the immunity provided in R.C. 2744.02(A)(1) because of the exception in R.C. 2744.02(B)(3). At the time of Bruce's accident, this section provided:[2]
 Except as otherwise provided in section 3746.24 of the RevisedCode, political subdivisions are liable for injury, death, orloss to persons or property caused by their negligent failure tokeep public roads, highways, streets, avenues, alleys, sidewalks,bridges, aqueducts, viaducts, or public grounds within thepolitical subdivision open, in repair, and free from nuisance* * *.
R.C. 2744.02(B)(3). Therefore, the issue becomes whether the City of Marysville was negligent in failing to keep U.S. 33 free from nuisance and, if so, then whether any of the defenses in R.C. 2744.03 apply to reinstate immunity.
 {¶ 10} The facts in the record reveal that Officer David Miller was dispatched to the scene of the grain spill and was the first officer to arrive at the scene. The record does not reveal at what time the grain spill occurred. The record does reveal that Officer Miller responded to the scene shortly after he received the dispatch on August 30, 2001. Upon noticing the grain spilled on the roadway, Officer Miller immediately contacted the street department and fire department. Officer Miller allowed traffic to proceed through the spilled grain during the clean-up process.
 {¶ 11} It was during this time that Bruce Willis approached the scene on his motorcycle. Bruce testified in his deposition that he observed a substance on the roadway and police officers at the scene. Bruce also testified that cleaning equipment was at the scene at that time. Bruce proceeded to operate his motorcycle through the grain and lost control.
 {¶ 12} Bruce and Darlene Willis claim that the grain spill constituted a nuisance and that the City of Marysville was negligent in the manner in which the clean-up of the grain spill was handled. We would be imposing quite a burden on the City of Marysville to expect that such spills would be cleaned up with more expediency than the grain spill in this case was cleaned up. Indeed, Bruce and Darlene Willis do not allege that the City of Marysville failed entirely to remove the alleged nuisance, the grain spill, from the roadway. Rather, they specifically allege that the traffic should not have been allowed to travel through the spill and that if traffic could not have been directed around the spill then the highway should have been shut down.
 {¶ 13} Ohio courts have had the opportunity on many occasions to determine what constitutes a nuisance with respect to R.C.2744.02(B)(3). The Ohio Supreme Court has defined nuisance as "[a] permanent obstruction to visibility, within the highway right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel * * *." Manufacturer's Nat'l. Bank v. Erie Cty. Rd. Comm'n.
(1992), 63 Ohio St.3d 318, paragraph one of the syllabus,587 N.E.2d 819. Manufacturer's built on the holding of Williamsonv. Pavlovich (1989), 45 Ohio St.3d 179, 182, 543 N.E.2d 1242, in which the Court determined that a nuisance possesses an element of permanency, which imposes a duty upon the municipality to remove it. In Williamson, the Court noted that it had previously determined that "not all obstructions or impediments to a municipality's highways are nuisances." Id. Further, the Ohio Supreme Court has held that a municipality is not an insurer against accidents upon its streets. Village of Oak Harbor v.Kallager (1894), 52 Ohio St. 183, 186, 39 N.E. 144; Taylor v.City of Cincinnati (1944), 143 Ohio St. 426, 447, 55 N.E.2d 724.
 {¶ 14} In determining a municipality's duty, "the proper focus should be on whether a condition exists within the [municipality's] control that creates a danger for ordinary traffic on the regularly traveled portion of the road." Franksv. Lopez (1994), 69 Ohio St.3d 345, 348, 632 N.E.2d 502. InFranks, design and construction defects in roads were found not to constitute nuisances. Id. at 349. However, the Court did find that the failure to maintain signage that was already in place can constitute an actionable nuisance claim. Id. at 348. The Court has also found that illegally parked cars located on the side of a highway do not constitute a nuisance. Williamson,
45 Ohio St.3d at paragraph one of the syllabus. Further, a muffler exhaust system that had been lying on the highway for approximately one hour and fifteen minutes was found not to be a nuisance. Ruwe v. Bd. of Springfield Twp. Trustees (1987),29 Ohio St.3d 59, 60, 505 N.E.2d 957.
 {¶ 15} On the other hand, the Ohio Supreme Court found that a malfunctioning traffic signal can be a nuisance to street traffic. Fankhauser v. Mansfield (1969), 19 Ohio St.2d 102,249 N.E.2d 789. In addition, the Court has found that overhanging branches and foliage which obscure the view of traffic signs or limbs of trees that fall upon passing cars can constitute nuisances. Harp v. Cleveland Heights, 87 Ohio St.3d 506,2000-Ohio-467, 721 N.E.2d 1020.
 {¶ 16} Based on our review of the case law regarding nuisances, we cannot conclude that grain spilled from a truck on a public highway that was being cleaned up at the time of the accident constitutes a nuisance. The City of Marysville had no part in creating the impediment on the roadway and took the necessary measures to make sure that the impediment was cleaned up as soon as it was brought the attention of the City. However, even if the grain spill could be construed as a nuisance, immunity would clearly be reinstated to the City of Marysville under R.C. 2744.03. The City of Marysville would have a defense under both R.C. 2744.03(A)(3) and (5), which provide:
(A) In a civil action brought against a political subdivisionor an employee of a political subdivision to recover damages forinjury, death, or loss to persons or property allegedly caused byany act or omission in connection with a governmental orproprietary function, the following defenses or immunities may beasserted to establish nonliability:
* * *
(3) The political subdivision is immune from liability if theaction or failure to act by the employee involved that gave riseto the claim of liability was within the discretion of theemployee with respect to policy-making, planning, or enforcementpowers by virtue of the duties and responsibilities of the officeor position of the employee.
* * *
(5) The political subdivision is immune from liability if theinjury, death, or loss to persons or property resulted from theexercise of judgment or discretion in determining whether toacquire, or how to use, equipment, supplies, materials,personnel, facilities, and other resources, unless the judgmentor discretion was exercised with malicious purpose, in bad faith,or in a wanton or reckless manner.
 {¶ 17} These defenses do not indicate that the legislature intended to relieve political subdivisions from liability for all negligent actions of their employees. Hallett v. Stow Bd. ofEdn. (1983), 89 Ohio App.3d 309, 313, 624 N.E.2d 272. The defenses to liability in R.C. 2744.03 must be read narrowly.Howell v. Union Twp. Trustees (Mar. 18, 1997), 4th Dist. No. 96CA2430, unreported, 1997 WL 142388. "In other words, the defenses and immunities of R.C. 2744.03 cannot be read to swallow up the liability provisions of R.C. 2744.02(B) so as to render them nugatory." Id. Discretion, as it is referred to in R.C.2744.03(A)(3) and (5), involves policy-making and the exercise of independent judgment.
Hacker v. Cincinnati (1998), 130 Ohio App.3d 764, 770,721 N.E.2d 416.
 {¶ 18} In Howell, the appellees, The Union Township Trustees, contended that they were using their discretion under R.C. 2744.03(A)(5) in placing oil upon a gravel road. Id. In contrast, the appellants, the Howells, contended that while the trustees exercised discretion in determining to put oil on the gravel road, they still had a duty to make sure the oil was applied in a safe and reasonable manner. Id. The appellate court found that the "appellees' conduct in actually spraying the gravel roads with oils is not such an exercise of discretion so as to provide the township trustees with immunity under R.C.2744.03(A)(5)." Id.
 {¶ 19} Also cited by Bruce and Darlene Willis in support of their argument that the actions of the Marysville police officer were not discretionary was the case of Leach v. Dayton (1994),98 Ohio App.3d 467, 648 N.E.2d 895. In Leach, the City of Dayton left a front-end loader that failed to start in the curb lane of the street without lights and without making any other efforts to warn motorists of the loader's presence. Id. at 471. The appellate court held that reasonable minds could find that there was no high degree of official judgment or discretion involved in the decision "to place warning devices such as cones, barricades or flashers around the disabled front-end loader." Id. at 470.
 {¶ 20} The situation in the case sub judice is distinguishable from the facts in the cases described above in which the courts found that the employees of the political subdivisions were not performing discretionary functions as intended by R.C. 2744.03(A)(3) and (5). Bruce and Darlene Willis assert that police officers should have diverted traffic rather than allowed traffic to proceed through the grain spill on U.S. 33. The record indicates that the grain spill covered both lanes in the westerly direction on U.S. 33. Therefore, since police officers would not have been able to divert traffic around the grain spill, the only other alternative would have been for officers to not allow traffic to proceed on U.S. 33 at a time in which Bruce Willis described the traffic as heavy in both lanes. The decision as to whether the conditions on the road are too dangerous for traffic to proceed through is one which involves discretion on the part of the police officers at the scene. The officers at the scene of the grain spill allowed the slowed traffic, which was traveling at approximately 35-45 miles per hour, to proceed through the grain spill. There is no evidence that this decision was made maliciously, in bad faith or in a reckless or wanton manner. Therefore, this decision by the officers is covered by R.C. 2744.03(A)(3) and (5).
 {¶ 21} Thus, even if the nuisance exception to liability under R.C. 2744.02(B)(3) applied to impose liability on the City of Marysville, immunity would be reinstated to the City pursuant to R.C. 2744.03(A)(3) and (5). The City of Marysville was entitled to immunity from liability and the trial court properly granted summary judgment in favor of the City. Accordingly, the assignment of error is overruled.
 {¶ 22} The judgment of the Common Pleas Court of Union County is affirmed.
Judgment Affirmed.
 Shaw, P.J. and Cupp, J., Concur.
[1] The current version of R.C. 723.01, effective April 9, 2003, no longer includes the language "shall cause them to be kept open, in repair and free from nuisance." The current version also refers to R.C. 2744.02(A) and (B)(3) for determining the liability or immunity from liability of a municipal corporation for the injury, death, or loss to person or property caused by the failure of a municipal corporation to perform its responsibilities under this section.
[2] The current version of R.C. 2744.02(B)(2), effective April 9, 2003, no longer makes a reference to "nuisance." The current version of the statute holds political subdivisions liable for their "negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *."