OPINION
{¶ 1} Plaintiff-appellant, Brandy Grooms ("Grooms"), and defendants-appellants, Delbert and Richard Crawford, appeal the decision of the Brown County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Mathew C. Miller ("Miller") and the village of Sardinia ("Sardinia"). We affirm.[1]
 {¶ 2} This case arose out of two traffic accidents that occurred on August 24, 2000, at the intersection of U.S. 62 and State Route 32 in Brown County, Ohio. The first accident involved a motorcycle and a tractor trailer. Upon learning of the first accident, Mathew Miller, a volunteer firefighter with the village of Sardinia, responded to the scene.
 {¶ 3} Upon arriving at the scene, Miller's supervisor instructed him to direct traffic around the accident. While Miller was directing traffic, a second accident occurred between Grooms and Delbert Crawford, who was driving a vehicle owned by his brother Richard. The accident occurred as their respective vehicles attempted to cross the intersection simultaneously. According to appellants, Miller waived the Crawfords' vehicle into the intersection at the same time that Grooms was crossing the intersection.
 {¶ 4} On May 26, 2001, Grooms filed a complaint against the Crawfords, Miller, and Sardinia. The complaint alleged that the accident occurred because Delbert Crawford was negligently operating Richard's vehicle, and because Miller was negligently directing traffic at the intersection.[2] On June 26, 2001, the Crawfords answered and cross-claimed against co-defendants Miller and Sardinia.
 {¶ 5} In their cross-claim, the Crawfords alleged the negligent, willful, wanton, or reckless actions, or inactions, of Miller and Sardinia caused the accident. In their answer to the complaint and cross-claims, Sardinia and Miller admitted that Miller was directing traffic at the scene, but denied that he did so negligently, recklessly, or wantonly. Sardinia and Miller also raised the affirmative defense of sovereign immunity.
 {¶ 6} Sardinia and Miller moved for summary judgment, and on April 11, 2005, the trial court granted summary judgment to Sardinia and Miller on the basis of sovereign immunity. In its written decision, the court concluded that Sardinia, through Miller, was performing a governmental function when he was directing traffic at the accident scene. A political subdivision such as Sardinia is immune from liability for governmental functions unless one of the exceptions in R.C. 2744.02(B) applies. Because the court found that none of the exceptions applied, it concluded that Sardinia is immune from liability. Additionally, the court noted that Miller's action or inaction while directing traffic was within the scope of his employment, and did not amount to willful, wanton, or reckless conduct. Accordingly, pursuant to R.C. 2744.03(A)(6), Miller was immune from liability as well.
 {¶ 7} Grooms and the Crawfords now appeal. All three appellants raise similar issues in conjunction with the following single assignment of error:
 {¶ 8} "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN GRANTING DEFENDANTS-APPELLEE'S, MATTHEW MILLER AND THE VILLAGE OF SARDINIA, MOTION FOR SUMMARY JUDGMENT."
 {¶ 9} Immunity from suit presents a question of law that is properly determined by summary judgment. Conley v. Shearer,64 Ohio St.3d 284, 292, 1992-Ohio-133. When reviewing a summary judgment, the lower court and appellate court utilize the same standard; we review the judgment independently and without deference to the trial court's determinations. Burgess v.Tackas (1998), 125 Ohio App.3d 294, 296.
 {¶ 10} Summary judgment is appropriate when the following have been established: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can only come to a conclusion adverse to the non-moving party. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 11} R.C. Chapter 2744[3] establishes a three-tier analysis for determining whether a political subdivision is immune from liability. Cater v. Cleveland, 83 Ohio St.3d 24,272-8, 1998-Ohio-421. First, R.C. 2744.02(A) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. R.C. 2744.02(A)(2) provides: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision in connection with a governmental or proprietary function."
 {¶ 12} Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C.2744.02(A). If the political subdivision's acts or omissions fall under one of these exceptions, then it is subject to liability.
 {¶ 13} Finally, R.C. 2744.03(A) makes available several defenses that a political subdivision may assert if it is subject to liability under R.C. 2744.02(B). These defenses do not come into play unless liability first attaches under one of the exceptions in R.C. 2744.02(B). See Cater, 83 Ohio St.3d at 28.
 {¶ 14} For general immunity to apply under the first tier of the analysis, a court must find that the defendant seeking immunity is a political subdivision that was engaged in a governmental or proprietary function. It is undisputed that Sardinia is a political subdivision as defined in R.C.2744.01(F). Governmental functions include, but are not limited to the following:
 {¶ 15} Activities that promote or preserve the public peace, health, safety, or welfare; the provision of police, fire, emergency medical, ambulance, and rescue services or protection; the regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, and public grounds; the regulation of traffic, and the erection of traffic signs, signals, or control devices. See R.C.2744.01(C).
 {¶ 16} The trial court concluded that Sardinia was performing a governmental function when Miller was directing traffic at the scene of the accident. We agree. Responding to an accident scene and directing the flow of traffic promotes the public safety, involves emergency services, and concerns the maintenance and regulation of the use of roads, highways, and streets. See Dolisv. City of Tallmadge, Summit App. No. 21803, 2004-Ohio-4454
(holding city was engaged in a governmental function when city employees were removing spilled salt from a roadway).
 {¶ 17} The second tier of the analysis requires a court to determine whether any of the exceptions to immunity listed in R.C. 2744.02(B) apply. See Cater; see, also, Greene Cty.Agricultural Soc. v. Liming, 89 Ohio St.3d 551, 557,2000-Ohio-486. Specifically, R.C. 2744.02(B) provides:
 {¶ 18} "(1) * * * [P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority.
 {¶ 19} "* * *
 {¶ 20} "(2) * * * [P]olitical subdivisions are liable for injury, death, or loss to persons caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
 {¶ 21} "(3) * * * [P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *.
 {¶ 22} "(4) * * * [P]olitical subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function * * *.
 {¶ 23} "(5) * * * [A] political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *."
 {¶ 24} The trial court determined that (B)(1) and (B)(2) do not apply because they pertain to the operation of motor vehicles and proprietary functions; and (B)(4) and (B)(5) do not apply because they pertain to activities on the grounds of buildings and liability expressly imposed by the Revised Code. We agree.
 {¶ 25} The only issue is whether the exception to immunity under (B)(3) applies. The trial court found, as a matter of law, that negligently directing traffic at an accident scene does not constitute negligent failure to keep the roads free of obstructions and in repair; nor does it amount to a nuisance. For the reasons that follow, we agree with the finding of the trial court.
 {¶ 26} In Manufacturer's Natl. Bank of Detroit v. Erie Cty.Road Comm. (1992), 63 Ohio St.3d 318, the Court addressed whether a township's duty to keep the road free from nuisance included ensuring that corn growing in the road's right-of-way did not obstruct a driver's visibility. Analyzing an identical version of R.C. 2744.02(B)(3) that is at issue here, the Court held that "[a] permanent obstruction to visibility, within the highway right-of-way, which renders the regularly traveled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3)," paragraph one of the syllabus.
 {¶ 27} In reaching its decision, the Court relied upon cases such as Frankhauser v. Mansfield (1969), 19 Ohio St.2d 102, in which it found a malfunctioning traffic signal could be a nuisance to orderly urban street traffic, and Robert Neff Sonsv. Lancaster (1970), 21 Ohio St.2d 31, in which it found that an overhanging tree limb impeding ordinary traffic could be a nuisance.
 {¶ 28} In Franks v. Lopez (1994), 69 Ohio St.3d 345, the Court found that a township's failure to maintain a road sign already in place could give rise to liability. In determining the township's duty under R.C. 2744.02(B)(3), the Court held that "the proper focus should be on whether a condition exists within the [political subdivision's] control that creates a danger for ordinary traffic on the regularly traveled portion of the road." Id. at 348.
 {¶ 29} In Harp v. City of Cleveland Heights,87 Ohio St.3d 506, 2000-Ohio-467, the Court held that a political subdivision could be held liable when a tree limb from land adjacent to a road that was also within the political subdivision's control fell onto a passing motorist. In reaching its decision, the Court held that the relevant focus in determining potential liability should be on the effect of the obstruction on the highway's safety, not on the nature of the particular obstruction. Id. at 511.
 {¶ 30} In addition, the Court held that the political subdivision must have either actual or constructive knowledge of the dangerous condition. "There is constructive knowledge if such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger." Id. at 512.
 {¶ 31} From the foregoing Ohio Supreme Court cases addressing political subdivision liability under R.C. 2744.02(B)(3), we formulate the following rule: In order for a political subdivision to be liable for injury or loss caused by its failure to keep the public roads, highways, and streets open, in repair, and free from nuisance, a dangerous condition (1) within the political subdivision's control must exist such that (2) the danger exists for ordinary traffic on the regularly traveled portion of the road, and (3) the danger must exist for a sufficient length of time so that it should have been discovered.
 {¶ 32} In the instant case, the existing dangerous condition from which the accident between Grooms and the Crawfords occurred was not within Sardinia's control. The dangerous condition existed because of the first accident between the motorcycle and the tractor. The accident between the motorcycle and tractor also did not create a condition that was a danger to ordinary traffic. By its very nature, an auto accident on a regularly traveled portion of a road disrupts the ordinary flow of traffic. Consequently, we find as a matter of law that Sardinia was not liable under R.C. 2744.02(B)(3).
 {¶ 33} We note, in passing, that our decision is not inconsistent with other courts who have addressed the liability of a political subdivision under similar facts. See Willis v.Commodity Specialists Co., 158 Ohio App.3d 444, 2004-Ohio-4807
(finding city not liable when a motorcyclist lost control and was injured after a police officer directed him to ride over spilled grain that was being cleaned off the road); Dolis,2004-Ohio-4454 (noting a city operation to remove a salt spill did not constitute a condition that affected the highway's safety for the regular and ordinary course of traffic).
 {¶ 34} Appellants argue that the general immunity available under R.C. 2744.02 does not apply when an employee of the political subdivision is carrying out the details of an assignment, only when making broad public policy choices. In support, appellants rely upon R.C. 2744.03(A)(5), which states:
 {¶ 35} "The political subdivision is immune from liability if the injury * * * or loss * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 36} Appellants' contention fails because it misapplies R.C. 2744.03(A). As noted above, R.C. 2744.03(A) makes available several defenses that a political subdivision may assert if it is subject to liability under R.C. 2744.02(B). These defenses do not come into play unless liability first attaches to the political subdivision under one of the immunity exceptions in R.C.2744.02(B). See Cater. We concluded above that Sardinia was not liable under R.C. 2744.02(B). Thus, we do not even reach the application of R.C. 2744.03(A).
 {¶ 37} We turn now to the trial court's determination that there was no genuine issue of material fact as to whether Miller was entitled to immunity.
 {¶ 38} Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability unless one of the following applies:
 {¶ 39} "(a) His acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Liability is expressly imposed upon the employee by a section of the Revised Code."
 {¶ 40} At issue in this case is whether Miller's acts in directing traffic were with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 41} "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified.Jackson v. Butler Cty. Bd. of Commrs. (1991),76 Ohio App.3d 448, 453-454; Cook v. Cincinnati (1995), 103 Ohio App.3d 80,90. "Bad faith" involves a dishonest purpose, conscious wrongdoing, intent to mislead or deceive, or the breach of a known duty through some ulterior motive or ill will. Jackson;Cook.
 {¶ 42} "Wanton" misconduct is the failure to exercise any care whatsoever. Fabrey v. McDonald Village Police Dept.,70 Ohio St.3d 351, 356, 1994-Ohio-368. Finally, "reckless" misconduct refers to misconduct that causes an unreasonable risk of harm and is "substantially greater than that which is necessary to make [the] conduct negligent." Thompson v. McNeil
(1990), 53 Ohio St.3d 102, 104-105.
 {¶ 43} Appellants contend that the trier of fact should make the determination as to whether a political subdivision employee's acts are negligent, reckless or wanton. Relying onHunter v. City of Columbus (2000), 139 Ohio App.3d 962, appellants argue that because the line between willful, wanton, negligent, and reckless can be a fine one, the issue of whether Miller acted wantonly or recklessly should be submitted to a jury.
 {¶ 44} Generally speaking, as appellants note, the issue of malicious, wanton, or reckless conduct is a jury question. The standard for showing such misconduct, however, is high. Fabrey,70 Ohio St.3d at 356.
 {¶ 45} During deposition, Miller admitted that he was coming off of very little sleep when he responded to the accident. He admitted he had little training in directing traffic and that the intersection was too much for one person to control. He did not recall waiving Crawford's vehicle into the intersection, and he admittedly "just froze" when he saw that Grooms' and Crawford's vehicle were about to collide.
 {¶ 46} No reasonable jury could conclude from the foregoing that Miller acted with malice, bad faith, wantonly, or recklessly when he directed traffic at the scene of the accidents. At worst, his actions were negligent. Accordingly, appellants' contention that the trial court erred in granting summary judgment to Miller is also not well-taken.
 {¶ 47} Appellants' assignment of error is overruled.
 {¶ 48} Judgment affirmed.
Young, J., concurs.
Walsh, J., dissents.
[1] The separate appeals of Grooms and the Crawfords have been consolidated, as both appeals involve similar issues and the same set of facts. We have also sua sponte removed this case from the accelerated calendar.
[2] In an amended complaint, filed on February 22, 2002, Grooms alleged Sardinia was negligent and/or willful, wanton or reckless in training Miller, and that Miller directed traffic in a wanton or reckless manner.
[3] The General Assembly has amended R.C. Chapter 2744 (Political Subdivision Tort Liability Act) several times since its initial enactment in 1985. For purposes of this appeal, we apply the version in effect in August 2000. See Hubbard v.Canton City School Bd. of Edn., 97 Ohio St.3d 451, 454,2002-Ohio-6718. This requires us to apply the version of the statute in effect prior to the enactment of Am.Sub.H.B. No. 350 in 1996. See State ex rel. Ohio Academy of Trial Lawyers v.Sheward, 86 Ohio St.3d 451, 1999-Ohio-123 (declaring Am.Sub.H.B. No. 350 unconstitutional for violating the one-subject provision of the Ohio Constitution), and Stevens v. Ackman,91 Ohio St.3d 182, 2001-Ohio-249. See, also, State ex rel. Bartlett v. BuckeyeState Bldg. Loan Co. (1940), 67 Ohio App. 334, 344-345
(stating that an unconstitutional act of the Legislature is not a law, but a nullity, and is in legal contemplation inoperative, as though it had not been passed).