**SCHNARRS et al., Appellants,**

v.

**GIRARD BOARD OF EDUCATION, Appellee, et al.**

[Cite as *Schnarrs v. Girard Bd. of Edn.*, 168 Ohio App.3d 188, 2006-Ohio-3881.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2005–T–0046.

Decided July 28, 2006.

Michael E. Grove, for appellants.

Kenneth A. Calderone, John Chylsta, Gregg A. Peugeot, and Bruce A. Zaccagnini, for appellee.

---

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellants, Jessica Schnarrs and others, appeal from the judgment entry of the Trumbull County Court of Common Pleas awarding summary judgment in favor of appellee, Girard Board of Education. For the reasons that follow, we hold that appellee is immune from liability pursuant to R.C. 2744.03(A)(3) and thus affirm the trial court's decision.

{¶ 2} Appellant Jessica Schnarrs was a senior at Girard High School and a member of the girls' varsity basketball team. Andy Saxon, Robin Jamison, and Nick Cochran were coaches employed by appellee, Girard Board of Education. The coaches were at the practice in question and were acting within the scope of their employment when the injury occurred.

{¶ 3} On January 19, 2003, Coach Saxon testified that he made the discretionary coaching decision to utilize recent male graduates to practice with the girls. Saxon stated that he believed using boys with sound basketball skills would improve the girls and better prepare them for stronger future opponents. One of the men selected was Chris Simmons, a former Girard varsity basketball player who stood 6'5" and weighed 260 lbs. Jessica had practiced with boys at least once in the past but she had never practiced against Simmons. Despite Simmons's size, Jessica indicated that she was not fearful of practicing with him because no one had been previously injured, and the team's practices were well organized and designed to accomplish Coach Saxon's objectives.

{¶ 4} During practice, Jessica was participating in a rebounding drill, the object of which was to obtain a rebound after a missed shot and throw the ball down the court to a waiting teammate. Simmons was defending Jessica at the time. After Jessica retrieved her first rebound, Simmons merely raised his arms to shield her pass. However, Jessica stated that Coach Cochran subsequently advised Simmons that he should not allow her to shoot or pass the ball; rather, according to Jessica, if she (or any girl) had the ball, Simmons was to swat the ball "across the court."

{¶ 5} After this exchange, Jessica testified that she obtained another rebound and "cocked [her] arm back to throw the ball, baseball style, across the court. As [her] throwing arm started forward, Chris Simmons stepped in front of [her], and hit the ball so hard that the force of this impact forced [her] arm back, snapping it, breaking [her] arm."

{¶ 6} Jessica testified that Simmons struck only the ball and, under game conditions, the contact would not result in a foul. Nonetheless, Jessica sustained a fracture of the right humerus bone.

{¶ 7} On June 3, 2003, appellants filed a complaint in the Trumbull County Court of Common Pleas seeking recovery of monetary damages as a result of the coaches' negligence. On June 30, 2003, appellee filed its answer, asserting that the claims were barred by the doctrine of assumption of the risk and, in any event, appellee was immune from suit pursuant to R.C. Chapter 2744. On July 16, 2004, appellee moved for summary judgment.

{¶ 8} On September 9, 2004, with leave from the court, appellants filed an amended complaint that included new allegations of recklessness against appellee. Also on September 9, 2004, appellee filed its answer to appellants' amended complaint. The next day, appellee filed its amended motion for summary judgment addressing appellants' additional claims. On December 29, 2004, appellants filed their motion in opposition. On March 25, 2005, the trial court conducted a hearing on appellee's motion and, on March 28, 2005, filed its judgment entry granting summary judgment in appellee's favor.[1] Appellants filed a timely appeal and assert the following assignments of error for our review:

{¶ 9} "[1.] Assuming that the trial court granted summary judgment in favor of appellee board of education based on a defense of political subdivision immunity under provisions in Revised Code Chapter 2744, the trial court erred in granting summary judgment.

---

1. Appellants' complaint was filed against various defendants including appellee and the three coaches present at the practice session leading to Jessica's injury. It bears noting, however, that the defendant coaches are not parties to the instant appeal.

{¶ 10} "[2.] Assuming that the trial court granted summary judgment based on the rule that individuals who engage in recreational or sports activities assume the ordinary risks of the activity, and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional,' the trial court erred in granting summary judgment on that basis.

{¶ 11} "[3.] Assuming that the trial court based the granting of summary judgment under the rule that as between participants in a sporting event only injuries caused by intentional conduct, or in some instances by reckless misconduct may give rise to a cause of action, the trial court erred in granting summary judgment on that basis."

{¶ 12} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 13} Summary judgment proceedings afford an appellate court the unique opportunity of reviewing the evidence in the same manner as the trial court. *Petersheim v. Corum,* 158 Ohio App.3d 377, 815 N.E.2d 1132, 2004–Ohio–4297, ¶ 9, citing *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212.

{¶ 14} Appellants' first assignment of error challenges the viability of appellee's assertion of immunity R.C. Chapter 2744.

{¶ 15} In *Frazier v. Kent,* 11th Dist. Nos. 2004–P–0077 and 2004–P–0096, 2005-Ohio-5413, 2005 WL 2542940, at ¶ 20, we stated:

{¶ 16} "R.C. Chapter 2744 sets forth a three tiered analysis for determining a political subdivision's immunity from liability. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556 [733 N.E.2d 1141]. First, R.C. 2744.02(A)(1) codifies the general rule of sovereign immunity, viz., that 'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' However, this general rule is limited by R.C. 2744.02(B), which sets forth five instances in which a political subdivision is not immune. Hence, the second tier of the analysis requires a court to determine whether any of the exceptions under R.C. 2744.02(B) apply. Finally, if a political subdivision is exposed to liability through the application of R.C. 2744.02(B), a court must consider whether the political subdivision could legitimately assert

any of the defenses or immunities under R.C. 2744.03. See, e.g., *Greene Cty. Agricultural Soc.*, supra, at 557 [733 N.E.2d 1141]."

{¶ 17} We begin our analysis by noting that a school district is a "political subdivision" as defined by R.C. 2744.01(F). Accordingly, it is generally not liable for injuries caused by the acts or omissions of its employees. R.C. 2744.02(A)(1). However, R.C. 2744.02(B)(4) provides that political subdivisions are liable for injuries "caused by the negligence of their employees and [occurring] within or on the grounds of, and * * * due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function." In its brief, appellee does not dispute that the injury in question occurred in connection with the performance of a governmental function. The focal issue under appellants' first assignment of error is whether summary judgment was proper after considering the defenses and immunities asserted by appellee under R.C. 2744.03(A)(3) and (5).

{¶ 18} We shall first address appellants' argument as it pertains to R.C. 2744.03(A)(5). The statute provides:

{¶ 19} "The political subdivision is immune from liability if the injury * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

■ {¶ 20} Here, the trial court could not render summary judgment against appellants based upon R.C. 2744.03(A)(5). First, we believe that there is no genuine issue of material fact as to whether the political subdivision, under the current facts, was utilizing "equipment, supplies, materials, personnel, facilities, and other resources." The injury was a result of the use of young men who had already graduated from high school. We do not see how the young men in question, including Chris Simmons, could be classified as equipment, supplies, materials, facilities, or resources. The question therefore becomes whether Simmons and his fellow recent graduates were "personnel" who were subject to the discretion of the political subdivision. The record indicates that the boys were voluntary participants in the practice; because Simmons was not an employee of the political subdivision, e.g., a member of the coaching staff, we cannot unequivocally say that he qualifies as "personnel." Accordingly, we hold that immunity cannot attach under R.C. 2744.03(A)(5) as a matter of law.[2]

---

2. This court's decision in *Elston v. Howland Local Schools*, 11th Dist. No. 2004–T–0092, 2005-Ohio-4765, 2005 WL 2210705, supports the foregoing outcome. In *Elston*, this court cited *Kiep v. Hamilton* (May 19, 1997), 12th Dist. No. 96–08–158, 1997 WL 264236, for the proposition that R.C. 2744.03(A)(5) cannot confer immunity upon a political subdivision for

{¶ 21} However, our analysis does not end here. While we hold that the trial court could not award appellee summary judgment based upon R.C. 2744.03(A)(5), we must nevertheless consider the viability of the defense set forth under R.C. 2744.03(A)(3). R.C. 2744.03(A)(3) provides:

{¶ 22} "The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

{¶ 23} Appellants contend that R.C. 2744.03(A)(3) does not protect appellee under the circumstances because the coaches, in organizing the practice session, did not have the requisite discretion. Appellants, citing *Enghauser Mfg. Co. v. Eriksson Eng.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, maintain:

{¶ 24} R.C. 2744.03(A)(3) "provide[s] a political subdivision with a defense against liability for acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving policy-making characterized by the exercise of a high degree of discretion. Once a political subdivision has made a decision to engage in a certain activity or function, the subdivision will be held liable the same as private corporations and persons for the negligence of their employees and agents in the performance of the activity." See *Enghauser*, paragraph two of the syllabus.

{¶ 25} Appellants' reliance on *Enghauser* is peculiar. *Enghauser* was decided before R.C. Chapter 2744 was enacted. *Enghauser* held that a political subdivision is immune from liability under certain circumstances when the discretion afforded the decisionmaker is of a "high degree." R.C. 2744.03(A)(3) does not explicitly require a specific quantity or quality of discretion ("high degree" or otherwise) as a precondition for asserting its defense. Additionally, *Enghauser*, in conjunction with *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, abolished the common-law doctrine of sovereign immunity for municipal corporations subject to certain exceptions related to the exercise of governmental discretion. *Haynes v. Franklin*, 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146. These problems notwithstanding, appellants nevertheless contend that the substantive principles set forth in *Enghauser* animate determinations regarding whether the discretion defense of R.C. 2744.03(A)(3) is appropriate.

---

the actions of its employees because the language of the statute indicates that the legislature intended the immunity to extend only to the acts of a political subdivision and not to the acts of its employees. It is worth noting that the conclusions reached in *Elston* are under review by the Ohio Supreme Court. See *Elston v. Howland Local Schools,* 107 Ohio St.3d 1697, 2005-Ohio-6763, 840 N.E.2d 203.

{¶ 26} Although discussion on this proposition is scarce, our research reveals that *Leach v. Dayton* (1994), 98 Ohio App.3d 467, 648 N.E.2d 895, lends some support to appellants' position. In *Leach*, the Second Appellate District stated that the exception to immunity set forth in *Enghauser* "was in effect codified in R.C. 2744.03(A)(3)." Id. at 470, 648 N.E.2d 895. While we do not disagree that the holding in *Enghauser* was a prototype of the codified defense set forth in R.C. 2744.03(A)(3), we believe that the language in *Enghauser* is significantly narrower than that of the superseding statute. In effect, *Enghauser* cannot be a comprehensive guide for interpreting R.C. 2744.03(A)(3).

{¶ 27} *Enghauser* conditions immunity (or the lack thereof) upon the acts or omissions of a *"municipal corporation * * * involving the exercise of a legisla-tive or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion."* (Emphasis added.) Id. at paragraph two of the syllabus. Alternatively, R.C. 2744.03(A)(3) vouch-safes immunity to a "political subdivision" when the acts or omissions giving rise to liability were within the discretion of an employee with respect to policies, planning, or enforcement powers of his or her position.

{¶ 28} Under *Enghauser*, immunity may attach only to municipal corporations. R.C. 703.01(A) defines a municipal corporation as either a city or a village. Alternatively, R.C. 2744.03(A)(3) provides immunity to employees of political subdivisions. A political subdivision includes, but is not limited to, municipal corporations. Therefore, while the holding in *Enghauser* may be instructive for determining whether a municipal corporation is entitled to immunity, we do not believe that *Enghauser* can be used as the definitive basis for interpreting R.C. 2744.03(A)(3). In our view, therefore, appellants' insistence that *Enghauser* sets forth the interpretive parameters of R.C. 2744.03(A)(3) is ill founded.

{¶ 29} That said, Coach Saxon's affidavit demonstrates that he had significant discretion in managing the general affairs of the girls' basketball team. Saxon testified that he was responsible for the manner in which team practices were conducted and the strategies used to prepare for games:

{¶ 30} "As Head Coach I am responsible for the conduct, control, and supervi-sion of the Girard Girls Varsity Team practices. It is within my discretion as the Head Coach to conduct the team's practices and to develop strategies to prepare them for their games."

{¶ 31} Saxon's affidavit continued:

{¶ 32} "I made the coaching decision to use boys who have good basketball skills and experience to assist with the Girard Girls' Varsity Team practice conducted on January 19, 2003.

{¶ 33} " * * *

{¶ 34} "It had been my experience as Head Coach of the Girard Girls' Varsity Team that the skill brought by the boys when they practiced with the girls helped the team improve and better prepare for upcoming games." [3]

{¶ 35} Saxon's testimony indicates that he was vested with significant discretion in managing the affairs of the girls' varsity basketball team such that his actions could be reasonably construed as involving the type of discretion contemplated by R.C. 2744.03(A)(3). Even were we to accept appellants' contention that R.C. 2744.03(A)(3) requires a "a high degree of judgment or discretion," we believe that Saxon's affidavit would support such a finding under the circumstances. Hence, appellants' argument is unpersuasive.

{¶ 36} Appellants further argue that R.C. 2744.03(A)(3) requires "a decision which (1) is in the nature of a basic planning and policy making function, and (2) the decision must be one that involves a policy making activity at the heart of governance of the subdivision that is an essential act of governmental decision making." In support of this contention, appellants cite *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 15 OBR 480, 474 N.E.2d 303, another case decided before R.C. Chapter 2744 was enacted.

{¶ 37} In *C & D Partnership*, the Supreme Court, citing *Enghauser*, held that a municipal corporation was immune from tort liability for approving a subdivision plat to the extent that it involved sound policymaking considerations. The court underscored that such policymaking activities were at the heart of municipal governance and further emphasized that its decision was confined to the facts before it. Although *C & D Partnership* might be usefully analogized to situations where a claimant is questioning a municipal corporation on its engineering decisions or policy determinations regarding urban development, we do not believe that its holding is applicable to the instant facts. Accordingly, we hold that both *Enghauser* and *C & D Partnership* offer no useful guidance for our analysis given the facts of the instant case. Appellants' arguments to the contrary are unavailing.

{¶ 38} Finally, appellants argue that a political subdivision may not retain immunity when an injury is occasioned by the negligence of its employees in the course of implementing a previously adopted policy or plan. See *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 349, 632 N.E.2d 502, citing *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808.

---

**3.** Assistant Coaches Jamison and Cochran filed affidavits stating that each assisted Coach Saxon in the "conduct, control, and supervision" of the girls' team practices. They also stated that they had the discretion to make decisions within the role of assistant coaches.

{¶ 39} In *Franks,* the court assessed whether a political subdivision may be liable for failing to keep its roadways free from nuisance as a result of its failure to maintain an allegedly dangerous intersection. Id. at 346, 632 N.E.2d 502. The court found that an allegedly defective design and construction of the intersection as well as the failure to erect proper signage did not constitute a nuisance within the meaning of R.C. 2744.02(B)(3) and the political subdivision was accordingly immune from suit on such claims. Id. at 351, 632 N.E.2d 502. In its discussion, however, the court indicated that "[w]hile the installation of traffic control devices by a political subdivision may be discretionary pursuant to the [Ohio Manual of Uniform Traffic Control Devices for Streets and Highways], once the decision to install has been made, the implementation of that decision is not immune from liability." Id. at 349, 632 N.E.2d 502, citing *Winwood,* supra.

{¶ 40} Here, appellants maintain that appellee may not assert immunity under R.C. 2744.03(A)(3) because Jessica's injury was a result of Saxon's negligence "in [the] implementation of the policy or plan to use young men in practice games as opponents of the girls' varsity basketball team." Appellants' argument, while innovative, fails to elucidate the "previously adopted policy" that Mr. Saxon, as head girls' basketball coach, was implementing when the injury in question occurred. There is no evidence that appellee prescribed a policy governing the manner in which varsity practices would be conducted. Appellants' reliance on *Franks* and *Winwood* is therefore misplaced.

{¶ 41} Saxon testified that he had nearly unchecked discretion to conduct practices and develop strategies to prepare the girls' basketball team for games. Discretion, under R.C. 2744.03(A)(3), has been defined as " 'some positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved * * *.' " *Pope v. Trotwood–Madison City School Dist. Bd. of Edn.,* 2d Dist. No. 20072, 2004-Ohio-1314, 2004 WL 541121, at ¶ 23, quoting *Addis v. Howell* (2000), 137 Ohio App.3d 54, 60, 738 N.E.2d 37. In *Pope,* a student was injured and ultimately died after an injury sustained during an "open gym" session. The session was supervised by a basketball coach and his assistant. After reviewing the coach's affidavits, the court determined that the supervision of the basketball games evinced the kind of judgment and consideration that would constitute the exercise of discretion under R.C. 2744.03(A)(3). Id. at ¶ 30.

{¶ 42} In *Starkey v. Hartzler* (Mar. 26, 1997), 9th Dist. No. 96CA0048, 1997 WL 197202, a middle-school football player was injured while being disciplined by his coach. The coach testified, by way of affidavit, that he was given discretion "to set the rules for conduct of the players and to impose discipline" and that he was "responsible for maintaining order during [the] practices and seeing that the practices [were] productive with a minimum of distraction and interference by the

players." Id. at 6, 1997 WL 197202. After reviewing the surrounding facts, the court determined that the methods employed by the coach to discipline his young players involved the kind of discretion contemplated by R.C. 2744.03(A)(3). Id. Accordingly, the court held that the school district was entitled to immunity pursuant to R.C. 2744.03(A)(3).[4]

{¶ 43} When observed in light of the foregoing holdings, we believe that the practice methods used by Saxon and his assistants were a product of the type of discretion contemplated by R.C. 2744.03(A)(3). Saxon's affidavit indicates that he had the discretion to conduct practices and set strategies in a manner that would best prepare the team for games. Saxon averred that in his experience, using boys in practice both improved the girls' skills and better prepared them for upcoming games. Accordingly, we adopt the Second Appellate District's conception of discretion set forth in *Pope*, supra. In this respect, we believe that Saxon's determination to use male players during girls' basketball practices demonstrated a positive exercise of judgment and a considered adoption of a particular course of conduct to achieve an object, viz., improving skills for upcoming games. Thus, the school district cannot be held liable, because Saxon, by virtue of his position, had the discretion to plan and conduct practices. See, e.g., *Starkey*.

{¶ 44} Appellants' first assignment of error is overruled.

{¶ 45} Immunity under R.C. Chapter 2744 is primary and serves to shield appellee from suit pertaining to the instant injury. Accordingly, we need not address appellants' second and third assignments of error relating to appellee's defense of assumption of the risk. Our resolution of appellants' first assignment of error renders appellants' second and third assignments of error moot.

{¶ 46} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

---

4. See, also, *Anderson v. Indian Valley School Dist. Bd. of Edn.* (Mar. 22, 1999), 5th Dist. Nos. 1998AP122, 1998AP123, and 1998AP124, 1999 WL 175218 (cheerleading advisor's assistance in planning a pep rally where a student was injured involved discretionary acts for which the district was exempt from liability under R.C. 2744.03(A)(3) and (A)(5)); *Mosely v. Dayton City School Dist.* (July 6, 1989), 2d Dist. No. 11336, 1989 WL 73988 (school district immune from suit after student fractured both arms during gym class activities. Although *Mosely* applied R.C. 2744.03(A)(5), the court in *Pope*, supra, indicated that its rationale would apply equally to R.C. 2744.03(A)(3) defense); *Marcum v. Talawanda City Schools* (1996), 108 Ohio App.3d 412, 670 N.E.2d 1067 (school district immune under R.C. 2744.03(A)(3) after student was injured by other students in a classroom because principal's actions in addressing the matter were within the scope of his policy-making, planning, and enforcement powers).

FORD, P.J., concurs.

O'TOOLE, J., dissents.